**FIRST NAT. BANK of TEMPLE v. ACHENBACH, Co. Treas.**

**FIRST NAT. BANK of LOCO v. WILLIAMS, Co. Treas.**

Nos. 15561, 15760—Consolidated. Opinion

Filed June 16, 1925.

1. **Taxation—Appeals from Assessment and Equalization—Statutory Procedure Mandatory.**

Whenever the statutes of the state provide a mode by which appeals may be taken from the assessment or equalization of property, that remedy is exclusive. Resort cannot be had to equitable remedies.

2. **Same—Suit by Bank Officer to Recover Taxes on Stock Illegally Paid.**

The officer of a banking corporation may maintain a suit to recover taxes, illegally paid, on the shares of stock for the stockholders of such corporation.

3. **Same—Validity of Assignment of Claim Against County.**

A claim against the county for taxes illegally paid by the officers of a banking corporation may be assigned by the officers of such corporation.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Courts, Cotton and Stephens Counties; A. S. Wells and M. W. Pugh, Judges.

Action by the First National Bank of Temple against B. H. Achenbach, County Treasurer of Cotton County, and by the First National Bank of Loco against N. O. Williams, County Treasurer of Stephens County. Judgment for defendants, and plaintiffs bring error. Affirmed.

Freeling & Howard, for plaintiffs in error.

Thos. J. Huff, Co. Atty., J. W. Brooks, Deputy Co. Atty., P. D. Sullivan, Co. Atty., and J. H. Long, Asst. Co. Atty., for defendants in error.

Opinion by JONES, C. These suits were instituted by plaintiffs in error in the district courts of Cotton and Stephens coun-

ties, Okla., to recover various sums of money paid the defendants in error for taxes, and by other parties similarly situated, who had duly assigned their claims to the plaintiffs in error. The taxes in each and every instance were paid under protest, as provided by law, to the county treasurers, defendants in error.

Appellants, who were plaintiffs in the trial court, alleged that the county assessor in assessing the taxes for the year of 1912 intentionally, purposely, and systematically under-assessed all other property in said counties, save and except the shares of stock in the various banks of said counties; that the shares of stock of the banks were assessed at their actual cash value, while all other property was assessed at approximately one-half of its cash value.

To the petition of plaintiffs in error the defendants in error filed a demurrer · in which various grounds were set up challenging the jurisdiction of the court, the right of plaintiffs to prosecute the suits. and the sufficiency of the petition, and the trial court in each of said cases sustained the demurrer, appellants elected to stand upon their petition, whereupon the court dismissed the cases, from which order and judgment of the court the appellants prosecute this appeal. These suits were instituted by plaintiffs in error upon the theory that they were entitled to the relief authorized under section 9971. Comp. St. 1921, which provides that:

"In all cases where the illegality of the taxes is alleged to arise by reason of some action from which the law provides no appeal, the aggrieved person shall pay the full amount of the taxes at the time and in the manner provided by law, and shall give notice to the officer collecting the taxes showing the grounds of complaint and that suit will be brought against the officer for recovery of them. * * *"

The court evidently based its ruling upon the theory that the plaintiffs in error are not entitled to the relief sought under the section heretofore quoted, but that they should have pursued the remedy provided, if in fact they had a remedy, under section 9966, Comp. St. 1921, which section lays down the procedure and provides a remedy as follows, that:

"Any taxpayer feeling aggrieved at the assessment as made by the assessor, or the equalization as made by the county board of equalization may, during the session of said board, or, if the same is closed, within ten days after the first Monday in June, file with said assessor, as secretary of said board, a written complaint specifying his grievances and the pertinent facts in relation thereto in ordinary and concise language and without repetition, in such manner as to enable a person of common understanding to know what is intended; and said board shall be authorized and empowered to take evidence pertinent to said complaint and for that purpose is authorized to compel the attendance of witnesses and the production of books and papers by subpoena and to correct or adjust the same, as may seem just. And the stenographer of the county court is directed, at the request of the board. or taxpayer, to take shorthand notes of such testimony and to transcribe such complaint and evidence, and a full transcript of the action of the board thereon and file the same with his certificate as to its accuracy in the district court, the filing of which transcript shall complete said appeal which shall, in due course, be examined and reviewed by said court and affirmed, modified or annulled as justice shall demand. In any case where the county board of equalization shall increase the valuation of any property above the value returned by the assessor, the county assessor shall notify, by mail, the person in whose name any such property is listed, giving the amount of such valuation as increased, and such person shall have ten days from the mailing of such notice in which to appeal from such valuation, and such notice shall state the limit of time for appeal."

The section provides for an appeal to the district court, by the party aggrieved, and authorizes the board of equalization to take evidence pertinent to the complaint made and to correct or adjust the same as would seem just. And further provides that:

"In any case where the county board of equalization shall increase the valuation of any property above the value returned by the assessor, the county assessor shall notify, by mail, the person in whose name any such property is listed," etc.

This clearly indicates that it was the intention of the Legislature to authorize the board of equalization to adjust all inequalities existing between taxpayers, and between owners of different classes of property, and under this provision the board of equalization may adjust such inequalities or discriminations without the presence of all parties concerned, and may not only lower the assessment of the complaining party, but may increase it.

The appellants rely on authorities which authorize courts to take jurisdiction of such matters where it is alleged that the officer assessing taxes has intentionally, purposely, and systematically under-assessed other property, etc. And this we think is a sufficient allegation to give courts of general jurisdiction, jurisdiction of such matters in states where there are no statutory provisions specifically providing a remedy,

such as our statutes provide, but where the Legislature enacts a law creating a board of equalization and sets forth the procedure that aggrieved taxpayers may pursue, then we hold that the application for an adjustment or equalization to the assessor and board of equalization is a condition precedent to the rights of the aggrieved party to maintain his cause in the district court.

From an examination of some of the authorities bearing on this question, we find language which would indicate that the courts would have held differently had there been a statute in existence, such as we have, and in some instances the aggrieved taxpayer had made complaint to the board of equalization. In the case of Andrews v. King County et al., 23 Pac. 409, the Supreme Court of Washington passed upon a similar case. The plaintiff alleged, as shown in the body of the opinion:

"That the action of the assessor in such alleged discrimination was indorsed and confirmed by the board of county commissioners in said King county, while sitting as a board of equalization."

Whether or not there was a hearing and protest by the aggrieved taxpayer. the opinion does not disclose, but it was evidently regarded as a material allegation necessary to give the court jurisdiction, and we think that before the assessor of taxes and the board of equalization should be charged with, and adjudged to have unlawfully discriminated against, certain taxpayers or classes of taxpayers, that they should have an opportunity to properly adjust such matters and to correct any discrimination made. And we think the courts generally recognize the authority of boards of equalization, and in the Andrews Case, supra, one of the contentions made by the defendant was that taxes in other counties in the state might be rendered uniform by any interference with the value of plaintiff's property as fixed by the assessor, and in response to this contention the court said:

"This would be a subject for the attention of a board of equalization which the state has the right to provide for by legislative enactment, and which would make intercounty laws or regulations to secure uniformity of assessment between the counties. But no such officers exist in this state, and a failure of the state to provide for such a tribunal will not militate against the rights of the individual which are guaranteed to him by the laws of the state and the Constitution or organic act. We think the uniform ruling of the higher courts has been that while equity will not interfere to correct mere mistakes or inadvertencies, or to contravene or set aside the judgments of assessors or boards of equalization in relation to values, it will interfere when the officers fraudulently, capriciously and tyrannically refuse to exercise their judgment by adopting a rule or system of valuation designed to operate unequally and to violate a fundamental principle of the Constitution." (Our Legislature has provided boards of equalization, county and state.)

This would further indicate to our minds that the assessor and board of equalization were entitled to have such matters called to their attention and given an opportunity to judicially determine the rights of the parties and to fairly and impartially administer the law as it is their imperative duty to do. Appellants rely on section 9971, heretofore referred to, and cite many authorities based on that statute, and similar statutes of other states, but it should be noted that this section of our statute deals exclusively with illegal taxes, and with taxes that were not due by the taxpayer and not due the state, county, or subdivision of the county, and provides that the court may issue an order where it is shown that the taxes paid—

"Are in excess of the legal and correct amount due, the collecting officer shall pay to such person the excess. * * *"

No contention is made in this case that the property of the complaining taxpayer was assessed in excess of its actual value, but it is admitted that it was rendered at its fair market value and that the taxes paid, in fact, are the proper, legal, and correct amount due the county, and, therefore, we hold that the section relied on has no application.

Appellants allege, possibly with some merit, that they have no remedy. other than to recover the taxes paid, which according to their contention are in excess of the amounts paid by other property owners, and that they are out of proportion and unequal to the taxes paid by other property owners. There is a general rule of law, followed by many authorities, to the effect that in determining whether or not a tax is illegal or excessive, you cannot do so by comparison with other assessments and taxes paid, but that each case must stand on its own bottom, and that the only question to be determined by the court is whether or not the taxes paid on the property involved in the particular case are illegal or excessive, but we do not believe that the rule applies to the case at bar, and in states where the Legislature has provided a scheme or remedy whereby all assessments and property values may be equalized and adjusted, and, as heretofore stated under section 9966, supra,

the assessment of other property may be taken into consideration for the purpose of equalization, in fact no equalization could be had, or made, unless the valuation and assessment made on other property was taken into consideration. The sole purpose of the creation of boards of equalization is to equalize and adjust the assessments of all property, and boards of equalization should be diligent, and ever ready to equalize all assessments, and protect the taxpayer who renders his property at a fair and reasonable valuation as the law provides, against those who render their property at a less value than its real value and contrary to the law.

Many other authorities are called to our attention by appellants, but this court has heretofore followed a different rule from that contended for, which is duly authorized by good authority.

"An action for the recovery of taxes paid cannot be maintained, however, where plaintiff has another and more appropriate remedy provided in the ordinary course of the tax proceedings themselves, as by an application to the board of equalization or other body for an abatement or redemption of taxes assessed illegally or excessively, or by an appeal or certiorari to review the assessment complained of, or by mandamus to obtain the correction f errors or irregularities in the assessment, or to compel the refunding of taxes illegally exacted." 37 Cyc. 1177.

And again, in 37 Cyc. 1183:

"By force of statute in some of the states, illegal taxes may be recovered back in an action at law when their payment was accompanied by a formal protest against the validity of the taxes and against being compelled to pay them. But as a general rule this privilege is given only in cases where the tax is entirely invalid or unauthorized, not where the ground of objection goes only to errors or overvaluations in the assessment."

And in the case of Busey, Co. Treas., et al. v. Prehistoric Oil & Gas Co., 79 Okla. 121, 191 Pac. 1033, this court said:

"Whenever the statutes of the state provide a mode by which appeals may be taken from the assessment or equalization of property, that remedy is exclusive. Resort cannot be had to equitable remedies."

This rule was recently followed in the case of First National Bank of Norman v. Briggs, Co. Treas., 104 Okla. 97, 230 Pac. 860, and we think that the appellants' contention to the effect that the banks in this case could not appeal from a discrimination in favor of other property owners, because the appeal from an application is a personal right of the property owners, is incorrect. We are inclined to the opinion that it is the duty of the board of equalization to correct such discrimination as is here complained of, and that any taxpayer who may be aggrieved by reason of such discrimination, in that he will be required to pay a greater proportion of the taxes than other property owners, possessed of property of equal value, would give him such interest in the equalization of property under our statute as would enable him to appeal from the action of the board of equalization should the board refuse or fail to equalize assessments and prosecute his cause in the courts. This proposition, we think, decides the case, but there are a number of other matters raised in this case, and both parties insist in their briefs that the court pass upon each of the questions raised, and pursuant to such request we will briefly do so.

The second proposition or issue raised is:

"That the plaintiff has no legal capacity to sue for the recovery of taxes paid on the shares of bank stock owned by the stockholders of said bank."

This question seems to have been passed on in the case of Hannan v. First National Bank, 269 Fed. 527, in the 8th Circuit Court of Appeals, wherein it was held that the bank had a right to maintain such suits, and in the body of the opinion the case of Citizens National Bank v. Kentucky, 217 U. S. 443, 54 L. Ed. 832, is cited, wherein the court said:

"As a pecuniary liability is imposed on the bank for the payment of the total amount of the tax imposed on all its stockholders, it is the real party in interest in a suit to enjoin the collection from the assets, a collection which is in effect an enforced declaration of a dividend. Redhead v. Iowa National Bank, 127 Iowa, 572, 103 N. W. 716."

And in the case of the Board of Equalization v. Peoples National Bank of Kingfisher, 79 Okla. 312, 193 Pac. 622, this court said:

"In assessing state or national banks, the assessment is not against the corporation upon its moneyed capital, surplus, and undivided profits, but the tax is levied against the shares of stock in the hands of stockholders, and the officers of the corporation act as the agent of the stockholders, both in listing the shares of stock for taxation, and in paying the taxes levied against said shares of stock."

And this is in keeping with the provisions of section 9607, Comp. St. 1921. It being the duty of the officers to render the

property for assessment and to pay the taxes, we think it necessarily follows that the same officers have a right to maintain an action to recover back any taxes improperly or illegally paid, and it is evident· that the stockholders could not maintain the action for the reason that if any sums were recovered they must necessarily be returned to the bank and become the assets of the bank and subject to all liabilities of the bank and could only find their way to the shareholder as dividends of the bank, and be declared and disbursed as such by the proper authorities of the bank.

The fourth proposition or issue discussed is that several causes of action are improperly joined, for· the reason that the claims were not subject to assignment, and for the further reason that if subject to assignment they were owned by the stockholders of the various banks mentioned and could not be assigned by the bank. However, we are inclined to the opinion that such claims are assignable. In the case of Erickson v. Brookings County, 18 L. R. A. 347, the Supreme Court of Dakota so held in dealing with a similar question, and in the body of the opinion quotes from Mr. Pomeroy, Remedies and Remedial Rights, sections 144-147, which says:

"It is fully established by a complete unanimity in the decisions that causes of action which survive and pass to the personal representatives of a decedent as assets, or continue as liabilities against such representatives, are in general assignable."

In this suit the assignment of a certificate of purchase at a tax sale was involved, and in the body of the opinion the court said:

"In the case at bar, Bowdle having a thing in action, that is, the right to a recovery of the money back from the county which he had paid for the wrongful sale of plaintiff's land for taxes, it being a claim which would survive to his personal representatives had he died before it was enforced, and not relating to his person or character, or confined to his body or mental feeling under the rule as above stated it was assignable, and his assignee had the same right and title to it as he had himself * * *."

In the case of Rambo v. Armstrong, 100 Pac. 586, the Supreme Court of Colorado said:

"A grantee, who is entitled under the statute to recover from a grantor, taxes paid on land conveyed, which the satute required the grantor to pay, could assign his claim against the grantor for the amount of such taxes."

And under these authorities we hold that the claims were such as might be assigned by the officers of the bank.

The fifth proposition urged is that the petitions of plaintiffs do not state facts sufficient to constitute a cause of action. This issue is practically disposed of by reason of the holding of the court on the first proposition, that the court was without jurisdiction to entertain this cause of action and that appellants are not pursuing the remedy or procedure authorized by our statutes, and the petition is insufficient in that it shows upon its face that the court has no jurisdiction to grant the relief sought, the filing of a complaint before the county assessor and board of equalization, asking for the equalization of the assessments, being a condition precedent to the right to maintain such an action in the district court.

We therefore recommend that the judgment of the trial court be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 37 Cyc. pp. 1080, 1177. (2) 37 Cyc. p. 1187. (3) 5 C. J. p. 893.