### DANIEL v. STUCKY, Co. Treas.

No. 16413—Opinion Filed April 6, 1926.

Rehearing Denied June 22, 1926.

**1. Taxation—Erroneous Listing and Assessment— Remedy of Taxpayers.**

Where real property is claimed to have been erroneously listed and assessed as lying within the corporate limits of a city, its alleged erroneous listing being based upon the invalidity of certain ordinances of the city intended to bring it within such limits, the remedy of the taxpayers is by application to the equalization board for correction thereof and, if denied relief there, by appeal to the courts. Pending such appeal his rights are fully protected by a compliance with the provisions of sec. 6, subdiv. B, ch. 107, S. L. 1915 (Comp. Stat. 1921, sec. 9970).

**2. Same.**

By the provisions of section 5, subdiv. B, ch. 107, S. L. 1915 (Comp. Stat. 1921, sec. 9969), application to the equalization board and appeal therefrom are made the sole and exclusive remedies for correction of erroneous assessments, and the remedy provided by section 7, subdiv. B, ch. 107, S. L. 1915 (Comp. Stat 1921, sec. 9971), for the recovery of illegal taxes where no right of appeal is given, cannot be resorted to for the correction of such erroneous assessment.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Tulsa County; Albert C. Hunt, Judge.

Action by R. T. Daniel against W. W. Stucky, County Treasurer of Tulsa County, to recover the first half of certain taxes paid by him for the year 1923 and alleged to have been illegally assessed. Judgment for defendant, and plaintiff brings error. Affirmed.

For a number of years prior to 1923, R. T. Daniel owned 80 acres of land east of and adjoining the corporate limits of the city of Tulsa, and during all of the time prior to 1923 said property was listed and assessed for taxation in Lynn Lane township. In 1919 the city commissioners of Tulsa passed an ordinance extending the city limits around the entire circumference of the city. The limits thus extended by this ordinance brought this land of R. T. Daniel within the new limits. In July, 1923, R. T. Daniel platted 40 acres of this land and requested the city commissioners to accept it as an addition to the city, which was done by ordinance. In December, 1923, the city commissioners passed another ordinance making the other 40-acre tract an addition to the city. In making up the tax rolls for 1923 the above-mentioned 80 acres of land was listed and assessed as lying within the corporate limits of the city of Tulsa and the municipal levies made for said city were extended against it accordingly. Prior to January 1, 1924, R. T. Daniel paid to the county treasurer the first half of the taxes due under this assessment for 1923, and served written notice on the treasurer that $702 of said amount was illegally assessed against his property, and notifying said treasurer that suit to recover this amount would be commenced within 30 days from the date of such notice. Thereafter this action was commenced to recover the $702 alleged to be illegally assessed against his property, and upon the trial of the cause and at the conclusion of plaintiff's evidence, the trial court sustained a demurrer thereto and rendered judgment in favor of the defendant. To review this action of the trial court this proceeding in error has been brought to this court by petition in error with case-made attached for review.

West & Petry, for plaintiff in error.

Byron Kirkpatrick, Co. Atty., and James Harrington, Asst. Co. Atty., for defendant in error.

Opinion by LOGSDON, C. Only one proposition is presented and argued in this case and this is covered by the first assignment of error reading:

"That said court erroneously sustained a demurrer to the plaintiff's evidence."

That the tax levies involved in this action are not illegal levies is disclosed by the following allegation of plaintiff's original petition:

"That defendant wrongfully and without authority of law and over plaintiff's objection and exception has extended the tax levies **legally applicable** to property located within the city of Tulsa upon the assessment of said premises."

That it is the listing and assessment of the property erroneously as lying within the city of Tulsa, instead of within Lynn Lane township which is the gist of plaintiff's complaint, is shown by the fact that the reasonableness of the valuation is not questioned, and by the following allegation in his petition:

"That the difference between the levies on property in Lynn Lane township and property in the city of Tulsa is 13.2 mills per dollar of assessed valuation."

It is thus apparent from the allegations of plaintiff's petition, that so far as this action is concerned the tax levies within the city of Tulsa for the year 1923 were legal in all respects, and the only question to be determined here is whether plaintiff can secure relief in this character of action from an erroneous listing of his property for taxation within the city of Tulsa, when, as alleged, it should have been listed for taxation in Lynn Lane township.

The greater portion of the argument, and of the authorities on which it is based, relates to the validity of the several ordinances of the city of Tulsa, by which this land was sought to be brought within the corporate limits, but in the view taken of the case here, it is immaterial to a consideration and determination of the question here involved whether said ordinances are valid or invalid.

Since plaintiff alleges that the municipal levies of the city of Tulsa for the year 1923 were legally applicable to all property within the corporate limits, it must follow that this action is not for the recovery of taxes illegally levied, but for the recovery of taxes paid under protest, which were alleged to be wrongfully collected by reason of an erroneous listing and assessment of the property in the wrong municipal subdivision of the state.

Plaintiff brought this action under section 7, ch. 107, subdiv. B, S. L. 1915 (Comp. Stat. 1921, sec. 9971), the material portion of which reads:

"In all cases where the illegality of the tax is alleged to arise by reason of some action from which the laws provide no appeal, the aggrieved person shall pay the full amount of the taxes at the time and in the manner provided by law, and shall give notice to the officer collecting the taxes showing the grounds of complaint, and that suit will be brought against the officer for recovery of them."

Section 2 of the same chapter and subdivision (Comp. Stat. 1921, sec. 9966) provides, among other things:

"Any taxpayer feeling aggrieved at the assessment as made by the assessor, or the equalization as made by the county board of equalization, may, during the session of said board, or, if the same is closed, within ten days after the first Monday in June, file with said assessor as secretary of said board, a written complaint specifying his grievances and the pertinent facts in relation thereto in ordinary and concise language and without repetition, in such manner as to enable a person of common understanding to know what is intended; and said board shall be authorized and empowered to take evidence pertinent to said complaint, and for that purpose is authorized to compel the attendance of witnesses and the production of books and papers by subpoena and to correct or adjust the same, as may seem just."

In 1916 the Legislature enlarged the time of aggrieved persons for presenting their claims of erroneous assessment by enacting chapter 19, S. L. 1916 (Comp. Stat. 1921, sec. 9674), the pertinent portion reading:

"The board of county commissioners of each county is hereby authorized to hear and determine allegations of erroneous assessments, mistakes or errors made in assessing or preparing the tax rolls, or in the description of land or other property, before the taxes have been paid, on application of any person or persons who shall show by affidavit good cause for not having attended the meeting of the county board of equalization for the purpose of correcting such error, mistake or difference."

Section 5, ch. 107, subdiv. B, S. L. 1915 (Comp. Stat. 1921, sec. 9969), reads:

"This act shall be construed to give remedies and rights in addition to those of appeal heretofore given by statute, but the remedies of resort to the boards and appeal therefrom **shall be the sole remedies** for the correction of assessment or equalization."

Section 1 of the same chapter and subdivision (Comp. Stat. 1921, sec. 9965) reads:

"An appeal taken from all boards of equalization as now provided by law shall have precedence in the court to which they are taken."

It is clearly evident from these various

statutory provisions, that plaintiff had a plain, speedy, and adequate remedy by application to the board of equalization for the correction of the erroneous listing and assessment of his property, if in fact it was erroneous. This right was preserved to him, upon proper showing, up to the last hour before paying his taxes, and if the board should decide against him, he had the right of appeal with a statutory direction to the court to which he appealed to give his claim precedence over all other business. Pending such appeal, and after paying the taxes demanded, he would have been fully protected in his rights by complying with the provisions of section 6, ch. 107, subdiv. B, S. L. 1915 (Comp. Stat. 1921, sec. 9970), the material portion of which reads:

"When such taxes are paid, the persons paying the same shall give notice to the officer authorized to collect them that an appeal involving such taxes has been taken and is pending. It shall be the duty of such collecting officer to hold such taxes so paid separate and apart from other taxes collected by him. If upon the final determination of any such appeal, it shall be determined that the taxes were illegally collected as not owing to the state, county and subdivision of the county, the court shall render judgment showing the correct and legal amount of taxes owed by such appellant, and shall issue an order in accordance with the court's findings; and if such order shows that the taxes so paid are in excess of the legal and correct amount due, the collecting officer shall pay to such person the excess tax, and shall take a receipt therefor."

It has been held by this court that section 7 of the 1915 Act, relied on by plaintiff, means just what its language states, viz., that it is a remedy for persons aggrieved by some action from which no appeal is provided. In the case of Sowers, Co. Treas., v. First Nat. Bank of Perry et al., 89 Okla. 160, 213 Pac. 876, the second and third paragraphs of the syllabus read:

"Under section 7367, Rev. Laws 1910, the county board of equalization, composed of the county commissioners, convenes the first Monday in June of each year, and under said section, and section 2, subd. B, art. 1, ch. 107, Session Laws 1915, any person aggrieved by an assessment returned by the assessor to said board may file with said board, as provided in said last-named section, a written complaint specifying his grievances, and on failure of the said board to correct or adjust such assessment as returned to it by the assessor, appeal lies therefrom to the district court.

"Section 7, subd. B, art. 1, ch. 107, Session Laws 1915, can only be invoked where the illegality of the tax in question arises from some action whereby the property is placed on the tax rolls, from which the law provides no appeal."

This holding by this court is controlling in the instant case. See, also, First Nat. Bank v. Achenbach, 110 Okla. 246, 237 Pac. 574.

Plaintiff, not having availed himself of the plain, speedy, and adequate statutory remedies provided for the correction of the alleged erroneous assessment of his property within the city of Tulsa, has not shown himself entitled to the relief here sought. The demurrer to plaintiff's evidence was properly sustained.

For the reasons herein stated, the judgment of the trial court is affirmed.

By the Court: It is so ordered.