**HUSTON, County Treas., v. CURTIS COM-PANIES, Inc.**

No. 22648. Opinion Filed Dec. 6, 1932.

Lewis R. Morris, Co. Atty., and B. C. Logsdon, Asst. Co. Atty., for plaintiff in error.

Suits & Disney, for defendant in error.

SWINDALL, J. This appeal involves causes Nos. 62982 and 63613, commenced in the district court of Oklahoma county, Okla., by Curtis Companies, Inc., a corporation, plaintiff, against Paul Huston, county treasurer of Oklahoma county, Okla., defendant, wherein plaintiff paid taxes on certain real estate for the year 1929 under protest, the first numbered action being to recover a certain portion of the first half of the taxes and the second action to recover a portion of the last half of the taxes for said year of 1929. The plaintiff did not list the real property described in its petition with the county assessor for the year 1929, but the assessor listed and fixed the value on same. The petitions in each case are substantially the same in form and the portion necessary for a consideration of this cause alleges:

"That the plaintiff is the owner of the following described real estate, to wit: Lots 9, 10, 11 and 12 block 12, of Main street addition to the city of Oklahoma City, Oklahoma county, Okla.; that said property was assessed originally by the county assessor of Oklahoma county, Okla., at a total valuation of $26,300 (being $4,500 each for said lots and $8,300 total improvements on same); that thereafter, and without any notice whatever to this plaintiff, and in violation of law, the assessed valuation of the said real estate and said improvements thereon was raised by the county assessor and county board of equalization of Oklahoma county as follows, to wit:

"That the assessed valuations of each of said lots was raised to $7,000, or a total of $28.000 for said four lots. and the assessed valuation of said improvements thereon was raised to $9,350. or a total assessed valuation on said real estate and improvements of $37,350; that the plaintiff was by law entitled to notice before any increase in said valuation was made, and that said increase was in violation of the constitutional rights of this plaintiff under the Constitution of the state of Oklahoma and con-

trary to law and statutory provisions covering the assessment of said taxes; and that the said county treasurer had no right or authority to collect or attempt to collect taxes upon said valuation of $37,350, but should have collected taxes upon said original valuation of $36,300 upon said real estate; that therefore the legal and proper tax upon said real estate for the said year 1929 was $1,267.40; that nevertheless said county treasurer demanded the sum of $1,-802 taxes upon said real estate for the year 1929, and demanded the sum of $901 for the first half of said taxes for the year 1929, whereas said taxes for the said first half of 1929 should be, and legally are, only $633.70; that on the 31st day of March, 1930, the plaintiff paid to the defendant, as county treasurer of Oklahoma county, Okla., said sum of $901, being one-half of the total amount of taxes assessed against said property above described of the plaintiff for said fiscal year 1929, said amount being the total amount of taxes due and payable at that time; that said amount of $901 was paid to said county treasurer under protest, and that at the time of the payment thereof, on March 31. 1930, the plaintiff, as provided by law, delivered to the defendant, as county treasurer, its protest in writing against the payment and collection of said taxes so paid, produced by the said illegal and excessive assessment, without notice, as hereinbefore set out; a copy of which protest is hereto attached, marked 'Exhibit A,' and made a part hereof; that said taxes last aforesaid were not paid voluntarily. but were paid under protest and compulsion. and the defendant was notified not to disburse the said sum so paid, and that suit would be brought for recovery thereof; that said amount of $901 so paid was excessive. illegal. and void in the sum of $267.30. because of the lack of notice of said increased assessment as above set forth."

To this petition the defendant filed an answer consisting of a general denial of all the allegations of plaintiff's petition. The case was submitted to the trial court upon an agreed statement of facts as follows:

"It is stipulated and agreed by and between plaintiff and defendant in the above-entitled and numbered cause, through their respective counsel, as follows:

"That Mr. Harris L. Danner was not the agent of the plaintiff at the time taxes were assessed and assessment increased. for the year 1929, and that no notice of increased assessment was received by Curtis Companies. Inc.. the plaintiff. through said Harris L. Danner. or otherwise, and that no notice of increased assessment was given by the county or its officials. It is further stipulated and agreed that inasmuch as the question involved in the above-entitled case is identical with the question involved in case No. 63613, entitled 'Curtis Companies.

Inc., v. Paul Huston, County Treasurer,' except that the above-entitled and numbered cause involves the first half for the year 1929 and said cause No. 63613 the second half for the year 1929; that, therefore, the two cases above referred to may be consolidated for purposes of trial, and that whatever judgment is rendered by the court in the above-entitled and numbered cause shall be rendered as the judgment of the court in case No. 63613 without further trial.

"It is further agreed and stipulated between the parties hereto, as to both the first half of the taxes for the year 1929 and the last half for 1929, as to the real estate involved in both of the above-named cases, that each of the four lots in question had been assessed for some previous year at $4,500; that no assessment was rendered by Curtis Companies, Inc., the plaintiff in the above-entitled cases, for the year 1929, and that, therefore, the county assessor assessed each of said lots at $4,500, being the same valuation assessed against each of said lots for some previous year; and that the county assessor and the county equalization board thereafter, as to each of said lots, raised said assessed valuation to the sum of $7,000; and it is further agreed and stipulated that in each of the cases above named and described the full amount of taxes were paid by the plaintiff, under protest. within the time and manner provided by law, and that notice was given to the county treasurer showing the grounds of complaint against the payment thereof under protest. and that suit would be brought against said county treasurer, for recovery of said taxes, and that within 30 days after the service of said notice on the county treasurer, suit was filed and summons served upon said county treasurer. It is further agreed that if the plaintiff is entitled to any judgment whatsoever that the plaintiff is entitled to the sum of $240.95 in each case, together with the legal interest from July 11. 1930, and costs."

The trial court rendered judgment in favor of the plaintiff and against the defendant in the sum of $240.95 with 6 per cent. interest thereon from March 31, 1930, amounting on said date to $253 in cause No. 62982.

The parties will be referred to in this opinion as they appeared in the trial court.

It is the contention of the plaintiff that this case is governed by the rule announced in Hays v. Bonaparte, 129 Okla. 258, 264 P. 605. It is the contention of the defendant that the facts in this case bring it within the rule announced by this court in Sowers, Co. Treas., v. First National Bank of Perry, 89 Okla. 160, 213 P. 876; Daniel v. Stucky, Co. Treas., 118 Okla. 150, 257 P. 776; Cotton v. Blake, Co. Treas., 133 Okla. 60, 270 P. 1105; and State v. State ex rel. Shull, 142

Okla. 293, 286 P. 891. In Sowers v. First National Bank, supra, a portion of the petition is set out in the opinion as follows:

" 'It did make and return to said assessor a verified assessment list for the tax year 1918, upon a form provided by said assessor, * * * furnished by the State Examiner and Inspector of the state of Oklahoma. * * * That such assessment list scheduled all of the items and values required by law and showed property in the gross amount thereon stated, and also scheduled real estate owned by said bank, and situated in the state of Oklahoma, otherwise directly listed for assessment and taxation for said year 1918 at its assessed valuation for that year, together with certain federal, state, and municipal bonds, then owned by said bank, all of which were by law exempt from taxation. That the said assessed value of said real estate and the value of said exempt bonds were deducted on said list from the property shown thereon, making a net return of no property subject to assessment and taxation. * * * That said verified list was delivered to said county assessor, who received and accepted the same without objection thereto, but that said assessor at some later date, unknown to plaintiffs and without their knowledge, and without notice to them or either of them, did return to the county board of equalization an assessment against plaintiffs in the amount of $25,235, and thereby by his own act, and without the notice required by law, did raise the assessed valuation of plaintiffs in the full amount of $25,235, and thereby did cause the levy of a tax thereon in the full amount of $1,225.92.

" 'That this action on the part of said assessor was not discovered by plaintiffs nor by any of them until the latter part of December, 1918, and that at the time they made examination of the tax rolls, preparatory to paying taxes on aforesaid real estate, otherwise separately assessed, that at the time of this discovery the county board of equalization for the year 1918 had adjourned sine die and the board of county commissioners had closed their session for that month, leaving the plaintiffs no recourse to any board, body, or person from which an appeal is provided.' "

Upon the facts stated in the petition in that case the court announced the rule of law applicable to the facts as follows:

"Under section 7367, Rev. Laws 1910, the county board of equalization, composed of the county commissioners, convenes the first Monday in June of each year, and under said section, and section 2, subd. B, art. 1, c. 107, Laws 1915, any person aggrieved by an assessment returned by the assessor to said board may file with said board, as provided in said last-named section, a written complaint, specifying his grievances, and, on failure of the said board to correct or adjust such assessment as returned to it by the assessor, appeal lies therefrom to the district court."

And that:

"Section 7, subd. B, art. 1, c. 107, Laws 1915, can only be invoked where the illegality of the tax in question arises from some action whereby the property is placed on the tax rolls from which the law provides no appeal."

The court quotes with approval from the decision of the Supreme Court of the United States in the case of State R. Tax Cases (1875) 92 U. S. 610, 23 L. Ed. 672, as follows:

"This board has its time of sitting fixed by law. Its sessions are not secret. No obstruction exists to the appearance of any one before it to assert a right, or redress a wrong; and, in the business of assessing taxes, this is all that can be reasonably asked."

This court then continues as follows:

"Had the plaintiff appeared before the county equalization board as provided by law, made its objection to the assessment as returned by the county assessor to said board, and that board had failed to give it a deduction to the extent of the assessed valuation of the real estate located in the state, the statute gave the plaintiff the right to appeal to the district court, and provides that the district court shall give right of way to all such appeals, and, if aggrieved by the action of the district court, a further appeal to the Supreme Court of the state."

In the case of Daniel v. Stucky, Co. Treas., supra, we held that:

"Where real property is claimed to have been erroneously listed and assessed as lying within corporate limits of a city, its alleged erroneous listing being based upon the invalidity of certain ordinances of the city intended to bring it within such limits, the remedy of the taxpayer is by application to the equalization board for correction thereof and, if denied relief there, by appeal to the courts. Pending such appeal, his rights are fully protected by a compliance with the provisions of section 6, subd. B. art. 1, c. 107, S. L. 1915 (Comp. Stat. 1921, sec. 9970)."

And that:

"By the provisions of section 5, subd. B, art. 1, c. 107, S. L. 1915 (Comp. Stat. 1921, sec. 9969), application to the equalization board and appeal therefrom are made the sole and exclusive remedies for correction of erroneous assessments, and the remedy provided by section 7, subd. B, art. 1, c. 107, S. L. 1915 (Comp. Stat. 1921, sec. 9971), for the recovery of illegal taxes, where no right of appeal is given, cannot be resorted to for the correction of such erroneous assessment."

In Cotton v. Blake, Co. Treas., 133 Okla. 60, 270 P. 1105, we held that:

"When the statutes provide a remedy against an excessive, erroneous, or improper assessment of the property of an individual, as by sections 9966 and 9674, C. O. S. 1921, by proceedings before the board of equalization for review, the taxpayer must at his peril avail himself of such remedy, and cannot resort to the courts in the first instance."

In State v. State ex rel. Shull, supra, this court held that:

"Where different legislative enactments have reference to the same subject, and are consistent with each other, they should be construed together and harmonized, if possible, so that effect will be given to each so far as is consistent with the evident intent of the latest enactment."

And that:

"The words 'erroneous assessments,' as used in section 9674, were not used in the act of the Legislature in the sense of 'illegal,' but that the assessment was inequitable merely."

We think that the facts in the case under consideration bring it clearly within the rule announced by this court in Sowers, Co. Treas., v. First National Bank of Perry, supra; Cotton v. Blake, Co. Treas., supra; and Daniel v. Stucky, Co. Treas., supra. It is clearly distinguishable from Hays v. Bonaparte, supra. In that case Hays filed an action to recover taxes paid under protest. There were eight causes of action set forth in the petition, most of the causes being to recover taxes paid under protest where it was alleged that the levies were illegal, the eighth cause of action being the one appealed to this court. That cause of action was demurred to by the county treasurer and the demurrer was sustained and the plaintiff elected to stand upon the demurrer and judgment was rendered in favor of defendant and the plaintiff appealed. The amended petition in that case, among other things, alleged:

"Plaintiff further alleges, however, that the assessed valuation which was extended upon the tax rolls was, after said rendition and assessment aforesaid, surreptitiously, illegally, and improperly increased to the sum of $2,800 on the aforesaid property for said taxing period. Plaintiff further alleges that said increase was made wholly without authority of law, and that said increase was not made by the board of equalization acting for Oklahoma county for said taxing year, or by any other agency or individual authorized by law to make such increase, and that said increase from $1,900 to $2,-800 was made without any notice of whatsoever nature to said plaintiff, and without his knowledge or consent; that said plaintiff had no means of ascertaining or discovering the increase in the valuation of said property until the time of the payment of the ad valorem tax on the same. * * *"

Under the allegations in the petition in that case, which the demurrer admitted to be true, this court held that the illegality of the tax arises by reason of some action from which the law provides no appeal, and that, therefore, the taxpayer might pay his taxes under protest and recover back the illegal portion thereof under section 9971.

In the case now under consideration it is not alleged that the property was voluntarily listed for taxation by the owner and the valuation placed thereon by him was increased or that said increase was not made by the board of equalization acting for Oklahoma county for said taxing year or any other agency or individual authorized by law to make such increase, or that the plaintiff did not know that the value had been finally fixed by the county assessor at the sum of $7,000 on each of said lots in time to appear before the county equalization board at its regular session, or appear before the board of county commissioners at a regular session to correct the assessment in the event the same was erroneous, and it is clear that before a party can pay his taxes under protest and bring an action to recover the illegal portion, if any, thereof 'under section 9971, he must allege facts showing that the illegality of the tax arises by reason of some action from which the law provides no appeal or that the failure to give such party notice of the increase deprives such party of due process of law.

Section 12581, O. S. 1931, provides, among other things, that all taxable property shall be listed and assessed each year at its fair cash value, estimated at the price it would bring at a fair voluntary sale, in the name of the owner thereof on the first day of January of each year, and that real property shall be listed and assessed only once in every two years beginning in the year 1915 and continuing every two years thereafter. If any real estate shall become taxable during the time between the period for assessing real estate, the county assessor shall assess same for taxation and place the same upon the tax rolls, or when any improvements or buildings of value are placed upon real estate after the date of the biennial assessment, the value of such real estate as increased by said improvements shall be added by the county assessor to the assessed valuation for the next ensuing year.

Section 12598, O. S. 1931, provides in part that:

"All property is to be valued tu the assessor, by the person whose duty it is to list the same but the assessor may place a different value on the same if he is satisfied that the value so given is not correct and he shall give to the person so listing the same, a copy of the schedule; and the assessor shall seek to have assessed the same classes of property at a uniform value throughout the county."

In Re Rolater, 67 Okla. 215, 170 P. 507, we held that the purpose of section 7324, R. L. 1910, which is the same as section 12598 O. S. 1931, in requiring the assessor to give the person listing property a copy of the schedule, when the assessor places an increased value on the property, is to give notice of the increased valuation so the owner may protest, and when it appears the property owner appeared before the board and made protest, which was heard and considered, the failure of the assessor to deliver a copy of the schedule will not render the assessment void. There is no law in force in this state that requires the assessor to give the person listing property a copy of the schedule when the assessor increased the value on said property before the assessor makes such increase and there is no law requiring the county equalization board to give notice to the property owner before increasing the value of the property, but the notice is required to be given after the increase has been made, so that the party listing said property may appear before the board and be heard relative to the justness of the increase. The only section of the Code that we find which requires notice to be given by an officer before listing and assessing property is section 12346, O. S. 1931, relating to omitted property, which provides that before listing and assessing property discovered the county treasurer shall give the person in whose name it is proposed to assess the same ten days' notice thereof by registered mail addressed to him at his last known place of residence fixing the time and place when objections in writing to such proposed listing and assessment may be made.

The plaintiff in this case knew that the property involved herein was subject to listing and valuation for taxation in the year 1929, and it was the duty of the plaintiff to list its property for taxation and to fix a value upon the same, and upon its neglect or refusal to list its property it was the duty of the assessor to list same and ascertain the amount and value of said property and assess the same as he believed to be the fair cash valuation thereof.

Section 9667, C. O. S. 1921 [O. S. 1931, sec. 12612] provides:

"The county assessor shall keep his office at the county seat during the period, and shall remain at the county seat at least 15 days before closing his books, during which time any person who has failed to render his property shall have opportunity to do so. * * *"

Section 9668, C. O. S. 1921 [O. S. 1931, sec. 12617] provides in part that:

"In all cases of failure to obtain a statement of property for any cause, it shall be the duty of the county assessor to ascertain the amount and value of said property and assess the same as he believes to be the fair cash valuation thereof."

When the county assessor raises an assessment that has been voluntarily made, it is his duty and he should notify the party listing his property for taxation of that fact, and when the county equalization board increases any assessment, it should give the notice to the property owner provided for in the Code; however, the assessment as increased is only an erroneous or improper assessment and the party has his remedy by appearing before the county equalization board or the board of county commissioners, and having any error in the assessment corrected as heretofore pointed out, and if the assessment has been increased by the assessor or the board of equalization without timely notice to the owner or without his knowledge or consent and he is thereby deprived of his right of a hearing before the county equalization board or the board of county commissioners, upon proper showing by affidavit of good cause for not having attended the meeting of the county board of equalization, and of his right of appeal from said boards as provided by law, then upon proper allegations that he has not been afforded a forum in which to be heard and redress a wrong, his remedy is to pay his taxes under protest and proceed in accordance with the provisions of section 9971, C. O. S. 1921 [O. S. 1931, sec. 12646]. But where a party knows that his property is subject to assessment and he fails to list the same with the county assessor as provided by law, he cannot sit idly by and fail to appear before the county equalization board or before the county commissioners and then be heard to complain that to require him to pay the taxes on the value fixed by the county assessor would deprive him of his property without due process of

law. Due process of law is shown when opportunity is conferred to invoke the equal protection of the law by judicial proceedings to secure the end and object sought to be attained.

The petition in this case failing to state facts showing that the illegality of the tax arises by reason of some action from which the law provides no appeal or that he was deprived of a hearing before the county equalization board or the board of county commissioners, and the statement of facts failing to disclose a case of that nature, we are of the opinion that the trial court erred in rendering judgment in favor of the plaintiff and against the defendant on the two causes of action involved herein.

This cause is, therefore, reversed and remanded to the trial court, with directions to it to grant a new trial in each case and to dismiss each cause at the costs of the plaintiff.

CLARK, V. C. J., and RILEY, HEFNER, CULLISON, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. LESTER, C. J., absent.