**Weldon BILLINGSLEY, County Treasurer of Seminole County, Plaintiff in Error,**

v.

**S. N. NORTH, Defendant in Error.**

**No. 36918.**

Supreme Court of Oklahoma.

May 8, 1956.

Rehearing Denied June 5, 1956.

**420**

levied on the basis of excessive valuations; and said judgments directed that said properties be re-assessed for those years. Pursuant to said judgments, said properties were thereafter re-assessed and their owners paid in full the amounts of taxes computed and entered against them on the County Treasurer's records pursuant to said re-assessments. That the taxes computed on the basis of the original assessments had purportedly been cancelled by said judgments was indicated on the tax rolls by a line drawn through those amounts and a notation to that effect showing the case number of the judgment applicable to each property, and the "Certificate of Assessment" at its reduced valuation, and the amount of taxes computed on the basis of said reduced valuation.

By May of 1947 defendant in error, hereinafter referred to as plaintiff, had become the owner of all of the properties and, as indicated by his own testimony, was dubious of the validity of the above-mentioned judgments. After consulting with his attorney, he evolved a plan designed to protect him against such invalidity. Accordingly, taking advantage of the purported cancellation, by the Twenty-First Legislature's House Bill No. 271, S.L.1947, p. 703, of all penalties accrued on delinquent taxes for the year 1941 and prior years, if paid on or before May 10, 1947, plaintiff paid to Seminole County's Treasurer the difference between the amounts of taxes shown to be delinquent against all of the properties *before* entry of said judgments and the amounts of such taxes that had been computed against them *after* said judgments and so-called re-assessments, which latter amounts had already been paid, as aforesaid. In making these additional payments, plaintiff procured from the County Treasurer's office, not only duly signed receipts evidencing them, but also statements to the effect that said payments were made under protest. Issuance of the new receipts was indicated on the tax rolls by listing the receipt number with the following notation: "Paid on original valuation."

Richard S. Roberts, Wewoka, specially appointed County Atty., and Atty. for Weldon Billingsley, County Treasurer of Seminole County, Hugh Roff, Wewoka, of counsel, for plaintiff in error.

Horsley, Epton & Culp, Wewoka, for defendant in error.

BLACKBIRD, Justice.

In the action out of which this appeal arose, defendant challenged the validity of seven judgments entered in Seminole County, Oklahoma, many years ago. Six of them were rendered in Causes Numbered 2619, 3279, 3302, 3589, 3590 and 3591 of that County's Superior Court on May 13, 1935, November 27, 1936, and February 18, 1938; while the seventh was entered in Cause No. 22529 of that County's District Court on May 15, 1941. All of said judgments purported to vacate or cancel delinquent ad valorem taxes on different parcels of Wewoka, Oklahoma, real estate for certain previous years, on the ground that they had been erroneously assessed and/or were

Shortly thereafter, or on June 3, 1947, plaintiff commenced this action against the Seminole County Treasurer, as defendant,

under Tit. 68 O.S.1951 § 15.50, which said section authorizes suit by a taxpayer to recover taxes he has paid under protest "In all cases where the illegality of the taxes is alleged to arise by reason of some action from which the laws provide no appeal, * * *". The money judgment plaintiff prayed for totalled $10,203.70, on the basis of eight alleged causes of action. Two of these, the sixth and seventh, concern taxes that had been paid after issuance of certificates of error. Since the trial court denied recovery on these two, they are not here involved and we are concerned only with plaintiff's 1st, 2nd, 3rd, 4th, 5th and 8th alleged causes of action wherein he relied upon the hereinbefore described judgments and re-assessments as showing that he did not really owe the taxes he paid under protest, and his right, under said causes of action, to recover them back, and, on the basis of which the trial court, in its judgment, granted him a total recovery of $9,-931.73. From said judgment defendant has perfected the present appeal.

■■■ Defendant maintains, as he did in the trial court, that the above mentioned prior judgments purporting to direct the so-called re-assessments which had the effect of reducing to the amounts plaintiff initially paid, the delinquent taxes on the properties involved in the above numbered causes of action, were void on their face, and, for that reason said delinquent taxes were never lawfully reduced; and that at the time plaintiff made the additional payments hereinbefore described, he, in reality, owed all that he paid and therefore was not entitled to recover back any of the amounts for which the trial court allowed him recovery. We agree as to most of said judgments. The judgment rolls of the Superior Court in Causes Numbered 3279, 3302, 3589, 3590 and 3591, all of which were introduced in evidence, clearly show by their pleadings and journal entries of judgment that they were attempts to obtain property re-assessments (resulting in tax reductions) in a manner not prescribed by law. Neither the petitions nor the judgment journal entries show any ground for invoking the court's jurisdiction to grant relief other

than that the delinquent taxes (whose cancellation was sought) were excessive and based on valuations in excess of the reasonable value of the properties involved. In 1936 and 1938, when those cases were tried and judgments entered, the Seminole County Board of Equalization was the statutory instrumentality for changing the assessed valuation of property in said County, S.L. 1933, ch. 115, p. 246, sec. 6, Tit. 68 O.S.1941 § 254, except in cases coming within the authority of said County's Board of County Commissioners to issue certificates of erroneous assessment. See Lairmore v. Board of County Com'rs, 200 Okl. 436, 195 P.2d 762, 764, and Ivester v. State, 183 Okl. 519, 83 P.2d 193. The first cited case involved arbitrary assessments for the year 1936 and some previous years, just as did the Seminole County actions above cited; and, just as was alleged and adjudged in those cases, in that case, said assessments were excessive, or based upon excessive valuations. There this court said:

"* * * plaintiffs' position results in a large degree from the action of themselves and their predecessor in title. The former owner, not only had a right to properly assess the lots but it was his duty to do so. Only after his failure could the assessor place the property on the tax roll. In addition, such owner could have the valuation corrected by applying to the equalization board at the proper times. The plaintiffs herein purchased the real estate knowing the situation which existed. Thus, they are in a position of their own choosing."

In that case we held that as the plaintiffs' predecessor in title had neglected or refused to avail himself of the statutory remedy above referred to, the court was "without jurisdiction to exercise equitable powers" to grant plaintiffs the relief they therein sought. Using as a pattern the third paragraph of the syllabus in Keaton v. Bonaparte, 174 Okl. 316, 50 P.2d 404, we laid down the following rule in the Lairmore Case:

"When statutes provide remedy against the excessive, erroneous, or im-

proper assessment of property by proceedings before board of equalization or review, taxpayer must at his peril avail himself of such remedy, and cannot resort to courts in first instance."

This rule is but one application of one of the general principles of equity jurisdiction requiring, for invocation of such jurisdiction, a showing that no adequate statutory or legal remedy is available. Ordinarily, if such a remedy was once available, but never sought, sufficient cause for such neglect or failure must be shown before a court of equitable cognizance may entertain jurisdiction. No excuse for such failure or negligence was alleged in the pleadings, nor indicated anywhere in the judgment rolls of the last cited Seminole County actions. This, despite the fact that the law then provided, as it does now, that "proceedings before the Boards of Equalization and appeals therefrom shall be the *sole* method by which assessments or equalizations shall be corrected or taxes abated." See O.S.1931, sec. 12653; Tit. 68 O.S.1951 § 15.49. While it is true that the petition in at least one of the actions alleged that the tax assessments there involved were not only arbitrary but were made without notice. Such bare allegation is insufficient, without the further allegation that the plaintiff therein was without knowledge of the assessment in time to pursue his statutory remedy and was thus deprived of due process. See Keaton v. Bonaparte, supra. In maintaining that the previous judgments must be treated as valid for the purposes of defendant's present collateral attack upon them, plaintiff cites cases referring to the presumptions which accompany judgments of courts of general jurisdiction. Such rules do not obtain, however, when, upon examination of the judgment rolls in connection with such judgments, it affirmatively appears that the courts rendering them were without jurisdiction of the subject matter of the actions, as it appears here. As said in Cummings v. Inman, 119 Okl. 9, 247 P. 379, 382: "Where the record speaks, there is no longer occasion to indulge in presumption." See Pettis v. Johnston, 78 Okl. 277, 190 P. 681, and 31 Am.Jur., "Judgments", secs. 604 and 858.

Plaintiff relies heavily upon this court's opinion in Board of County Com'rs of Seminole County v. Griffith Realty Co., 205 Okl. 253, 237 P.2d 144, using portions of that opinion for the argument that since tax liens constitute a cloud upon real estate titles, and the quieting of titles comes within the general jurisdiction of Seminole County's Superior and District Courts, the judgments of those courts, in question here, cannot be said to concern a subject beyond their jurisdiction. This argument contains abstract truths but it is inapplicable to the five judgments we are now considering. None of the suits in which these were rendered were quiet title actions, nor did the facts alleged therein invoke that type of relief, as did those alleged in the Griffith Realty Company case, supra. Furthermore, no objection to the jurisdiction of the trial court in that case was interposed; and there was no judgment roll to support the collateral attack the defendants therein made on the Superior Court judgment there involved.

The fact that courts of general jurisdiction have no original, or "first instance" jurisdiction, to relieve against excessive, erroneous, or improper ad valorem tax assessments, Lairmore v. Board of County Com'rs, supra is the reason for the inapplicability of many of the cases cited by plaintiff, such as Bucy v. Corbin, 101 Okl. 124, 223 P. 134, to the effect that where the court has jurisdiction to grant the relief granted by its judgment, its decision that a particular case came within that jurisdiction cannot be successfully questioned on collateral attack; and other authorities distinguishing between jurisdiction, and exercise of jurisdiction. In this connection see 21 C.J.S., Courts, § 26, et seq.

What we have above said does not apply however to the judgments in the Superior Court Cause No. 2619, and the District Court Cause No. 22,259. In those actions, the plaintiffs alleged facts which, among other things, showed that town lots

**423**

were assessed jointly, and consequently illegally. See Emery v. Stansbury, 173 Okl. 478, 49 P.2d 155. Such assessments were not merely "erroneous" within the meaning of the statutes authorizing administrative boards to grant relief against them. See Huston v. Curtis Companies, 160 Okl. 216, 16 P.2d 874; State v. State ex rel. Shull, 142 Okl. 293, 286 P. 891; Hays v. Bonaparte, 129 Okl. 258, 264 P. 605. Such joint assessment of separate parcels of property renders it difficult, if not impossible in many cases, for the owners to determine, for the purpose of applying for a reduction of taxes, whether or not either parcel is assessed in excess of its true value; and if so, which one. From this view of the matter, we think there is no difference in principle between such a case and one in which taxable property is assessed jointly with non-taxable property. In this connection see Mullican v. Smith, 85 Okl. 148, 204 P. 904. Both are cases in which the statutes relative to the correction and/or adjustment of erroneous assessments do not provide an adequate or exclusive remedy. See also Cox v. Dillingham, 199 Okl. 161, 184 P.2d 976. We therefore hold that the judgments in Causes Numbered 2619 and 22,259, supra, were not void on their face and therefore not subject to collateral attack in the present action. Similarly, we also hold that plaintiff's payment of the difference between the amounts of taxes originally assessed on the property involved in those cases, and the amounts of taxes certified for them pursuant to their re-assessment was made in one of the class of cases in which, under Tit. 68, § 15.50, supra, taxes may be paid under protest and recovered back by suit. In this connection see Mullican v. Smith, supra. Accordingly, the trial court did not err in allowing plaintiff recovery on his third cause of action.

In accord with the foregoing views, the trial court's judgment is reversed as to plaintiff's first, second, fourth, fifth and eighth causes of action. It is affirmed as to plaintiff's other causes of action.

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN, HALLEY, JACKSON and HUNT, JJ., concur.