COX et al. v. DILLINGHAM, County Treas.

No. 32036.   Sept. 23, 1947.

*184 P. 2d 976.*

A. O. Harrison, of Bartlesville, for plaintiffs in error.

J. D. Plunkett, County Atty., of Bartlesville, for defendant in error.

LUTTRELL, J.   This action was brought by plaintiffs, Gerald J. Cox and Paul F. Dahlgren, against Marvin H. Dillingham, county treasurer of Washington county, for the recovery of taxes paid on property claimed to be exempt. The case was tried to the court without the intervention of a jury and upon an agreed statement of facts, and the trial court sustained the motion of the county attorney to dismiss the action, the motion being based upon the grounds that the plaintiffs failed to make out a case, and that the court had no jurisdiction to determine the matter. Plaintiffs appeal.

The petition filed by plaintiffs and the agreed statement upon which the case was tried disclose without dispute that the plaintiff Paul F. Dahlgren is the owner of 16.42 acres of land in Washington county; that on May 15, 1942, Dahlgren and his wife leased said property to Gerald J. Cox for a term of three years from June 1, 1942, at an annual rental of $10 per year, plus all taxes assessed and legally payable against the property during said term, and plus premiums on insurance to be carried on the property. Said lease provided that the land, which had theretofore been the home of lessors, should be used exclusively for the operation of a school for boys or girls; it provided further that at the end of the three year term, if lessee should conduct a meritorious school during such period, lessee could renew the lease for an additional term of five years, and that same might thereafter be extended for successive five-year periods not to exceed 23 years from June 21, 1942. After the first three years, the rental to be paid by lessee, in addition to that fixed in the lease for the first three years, was to be either 5 per cent of the gross operating receipts received by lessee, less any amounts paid as taxes or insurance, or 10 per cent of the net earnings received by lessee from the operation of the school, less any amount paid

for taxes or insurance, whichever should be the greater. The lease further provided that lessors could terminate it at any time upon the breach of any conditions by lessee, and that the contract should never be construed as constituting a partnership between lessors and lessee. It also granted an option to lessee to purchase the property.

On February 5, 1943, Dahlgren filed with the county assessor of Washington county, a statement of property for taxation, containing the description of the above-described property with this notation: "Exempt by reason of being used exclusively for school purposes and under lease therefor." The board of equalization of Washington county disregarded the claimed exemption and placed a taxable valuation upon the property. Plaintiffs did not appeal from the action of the board, but paid the taxes under protest and thereafter brought this action to recover the taxes so paid. At the trial it was stipulated that the property in question "is occupied now by a school and used exclusively for school purposes and has been since December 31, 1942." The cause was tried on May 31, 1944.

Plaintiffs contended in the trial court, and here contend, that the property is exempt from taxation under the express provisions of article 10, sec. 6 of the Constitution. That section, insofar as applicable, provides as follows:

". . . All property used . . . exclusively for schools . . . shall be exempt from taxation. . . "

Plaintiffs contend that the property is being used exclusively for school purposes and therefore comes · squarely within the exemption above quoted. They assert that it is the use to which the property is devoted, and not the ownership or the pecuniary profit to the owners, which determines whether or not the property is exempt from taxation. .

This court has repeatedly held that in ascertaining whether or not property is exempt from taxation under the provisions of our Constitution, the purpose for which such property is used is the determinative factor.

In Board of Commissioners of Tulsa County v. Tulsa Business College, 150 Okla. 197, 1 P. 2d 351, we said:

"It is the use to which the property is devoted and not the presence or absence of pecuniary profit to the owners which determines whether or not the property is exempt from taxation."

In Board of Commissioners of Tulsa County v. Sisters of the Sorrowful Mother, 141 Okla. 32, 283 P. 984, we said:

"The purpose for which property is used is the test to be applied in determining whether such property is exempt from taxation, and that use is a question of fact to be determined from the evidence."

In Beta Theta Pi Corporation v. Board of Commissioners, 108 Okla. 78, 234 P. 354, we specifically held that ownership of property used for such purposes was immaterial. Therein we said:

"It will be observed from a reading of said section 6, art. 10, of the Constitution, that the constitutional test as to whether certain property comes within the classes exempted by the Constitution, is the 'use' to which it is put. It is immaterial what name the institution, organization, or society may bear, or who may own the property in question, but it is the use to which the property is dedicated and devoted which constitutes the test as to whether it is exempt. While it is clear that the 'use,' to which the property is dedicated and devoted constitutes the test under the Constitution and needs no support from other decisions or authorities, yet such view is well supported by decisions of other states wherein the same subject, under similar constitutional provisions, has been under consideration and passed upon." (Citing authorities.)

In Oklahoma County v. Queen City Lodge No. 197, I.O.O.F., 195 Okla. 131, 156 P. 2d 340, we approved and followed

the rule announced in the above cases, and overruled cases holding that the exemption extended to income.

While in the above cases the parties using the property upon which the exemption was upheld were also the owners, the rule announced in those cases, in our judgment, applies also to cases where the property, as here, is owned by one person and is used by another. `

In Scott v. Society of Russian Israelites (Neb.) 81 N. W. 624, the owner of property leased it to a religious organization, which agreed to pay all taxes against the property in addition to a monthly rental. The property was used by the lessee solely for religious purposes. The statute of the State of Nebraska exempted property "used exclusively for school, religious, cemetery, and charitable purposes." In holding that use was the decisive test in determining whether the property was exempt or not, the court said:

"It is the exclusive use for the purpose named which determines whether the property is subject to the burden of taxation or not. Medical College v. Rush, 22 Neb. 449, 35 N.W. 222; Academy of the Sacred Heart v. Irey, 51 Neb. 755, 71 N.W. 752; First Christian Church v. City of Beatrice, 39 Neb. 432, 58 N.W. 166; Washburn College v. Shawnee Co., 8 Kan. 344; St. Mary's College v. Crowl, 10 Kan. 442; Gerke v. Purcell, 25 Ohio St. 229. To hold that a religious society must be the absolute owner of the property occupied or used by it exclusively for church purposes, to create the exemption, would be to inject words into the Constitution and statute which are not therein written. This we have no power to do."

In Anniston City Land Co. v. State (Ala.) 48 So. 659, the owner of property leased it for school purposes at a yearly rental. The county in which the property was located assessed taxes against it and the owner appealed. The Constitution of Alabama exempted property "used exclusively for religious worship, for schools, or for purposes purely chari-

table." The court cited with approval Scott v. Society of Russian · Israelites, supra; Washburn College v. Shawnee County, 8 Kan. 344, and other cases holding that the exemption was determined solely by the use to which the property was put. The court said:

"Upon the foregoing considerations it is manifest that section 91 of the Constitution makes use of the property, irrespective of ownership, the test of the right of exemption from taxation, and that, under the Constitution, in order to be exempt, it is only necessary that the property shall be situate in a city or a town, shall not exceed in area the limitation fixed by the Constitution, and that it shall be used directly and exclusively for schools. The cases cited in appellee's brief, when examined, will be found to involve the construction of laws dissimilar to ours, in that exclusive use is not by them constituted the only criterion of exemption. Therefore they are not in point."

In Cooley on Taxation (4th Ed) sec. 680, the author says:

"If the exemption depends on the use made of the property, rather than the ownership, the title to the property is immaterial, i. e., the title need not be in the user claiming the exemption. In such a case it is the use and not the ownership which determines the right to the exemption. It follows that the owner may claim the exemption although the use is by another. Where the exemption is based upon the use to which the property is to be put, it is immaterial that the title stands in the name of a trustee. If the exemption applies only to property 'owned and used,' then the ownership and use for the designated purpose must concur."

While there are authorities to the contrary (see Commissioners of Cambria Park v. Board of County Commissioners (Wyo.) 174 P.2d 402), which take the view, and hold, that the renting or leasing of property for religious, charitable, or educational purposes is a use which renders the property taxable, we consider the rule announced in the cases above cited, which is in harmony with the decisions of this court, to be

supported by the better reasoning. It is apparent that in order to hold property used for exempted purposes by another than the owner taxable, we must write into our constitutional provision above quoted, language which makes the exemption dependent upon both use and ownership instead of use alone. This we may not do.

In Shaw v. Grumbine, 137 Okla. 95, 278 P. 311, in referring to the construction of constitutional provisions, we said:

"To get at the thought or meaning expressed in a statute, a contract, or a Constitution, the first resort, in all cases, is to the natural signification of the words, in the order of grammatical arrangement in which the framers of the instrument have placed them. If the words convey a definite meaning, which involves no absurdity nor any contradiction of other parts of the instrument, then that meaning, apparent on the face of the instrument, must be accepted and neither the courts nor the Legislature have the right to add to it or take from it."

The provision of our Constitution above quoted is plain and unambiguous, and therefrom it is apparent that the framers of that instrument sought to encourage and assist institutions of learning and charitable and other institutions, which are beneficial to the state, and to some extent relieve the government of some of its burdens, and that the exemption was intended to apply to such institutions regardless of whether the property occupied by them was owned by them or others. This being its purpose, and its meaning being plain, we may not, by construction, add to or take from it by engrafting upon it terms or provisions which vary, modify, or negative the intention of the framers as expressed in the plain language thereof.

We hold that under the plain and unambiguous provision of our Constitution, the property involved in the case at bar was nontaxable.

The defendant treasurer in his brief does not seriously contend that the property involved is taxable, but contends that under 68 O.S. 1941, §§15.41, 15.49, the statute provides plaintiff with an adequate remedy at law by filing a complaint with the county board of equalization, and appealing therefrom, and that such remedy is exclusive, citing Keaton v. Bonaparte, 174 Okla. 316, 50 P. 2d 404, in support of this contention. We cannot agree with this contention. The constitutional exemption as to those classes whose property is specifically exempted thereby is self-executing. 12 C. J. 736, §133; 61 C. J. 385, §385; 26 R.C.L. 316, §277; 51 Am. Jur. 506, §500. In such case the property so exempted is not subject to taxation, and the tax assessed thereon is illegal and void, and the Legislature, by passing a law requiring a certain procedure to be followed in asserting the exemption, may not deprive the owner thereof and validate the illegal tax. St. John's Church v. Los Angeles County (Cal.) 42 P. 2d 1093; First Congregational Church v. Los Angeles County (Cal.) 65 P. 2d 813; Calhoun v. Flynn (Ariz.) 289 P. 157.

Article 10, sec. 8 of the Constitution provides for the assessing of property which "may be taxed ad valorem." Since the exempted property is not subject to taxation, the county assessor had no authority to assess a tax against it, and the tax would not be rendered valid, and the constitutional exemption nullified, by failure to follow the statutory procedure.

In Walker v. Hays, 127 Okla. 123, 260 P. 15, we held that where the property of a restricted Indian was not subject to taxation, the sale of the property for delinquent taxes could be enjoined. There the court said:

"If the property could be taxed, when the tax ferret followed the procedure provided by law in placing it on the tax rolls and the plaintiff did not appeal therefrom, he would be bound thereby, and, not having pursued his legal remedies, he would not be per-

mitted to pursue the equitable remedy of injunction. If, on the other hand, the property was not taxable, the county officials had no jurisdiction whatever to levy a tax against the same and any levy made by them would be void, and if the levy was void, then the equitable remedy of injunction could be pursued to enjoin the sale of the property, because any sale made under the tax warrants in such a case would be wholly void."

The trial court should have rendered judgment for plaintiffs as prayed for in their petition.

Reversed, with directions to render judgment for plaintiffs.

HURST, C.J., DAVISON, V.C.J., and RILEY, WELCH, GIBSON, and CORN, JJ., concur.