LONDON SQUARE VILLAGE,
INC., Appellant,

v.

OKLAHOMA COUNTY EQUALIZATION
AND EXCISE BOARD, Appellee.

No. 48596.

Supreme Court of Oklahoma.

Nov. 2, 1976.

Rehearing Denied Feb. 14, 1977.

Freeman & Freeman, Oklahoma City, for appellant.

Curtis P. Harris, Dist. Atty. by James P. Laurence, Asst. Dist. Atty., Oklahoma City, for appellee.

BERRY, Justice:

This is appeal from judgment of district court affirming decision of Oklahoma County Board of Equalization [Board] that denied plaintiff's request to declare certain of its property exempt from county ad valorem taxes.

Plaintiff, London Square Village [Village] is a non-profit corporation organized and chartered in February 1970 under 18 O.S.1971 § 851 et seq. Village was incorporated by Board of Directors of National Association of the Volunteers of America, a non-denominational Christian religious organization. Volunteers of America is granted tax exempt status as a church by Internal Revenue Service as are its subordinate organizations around the country such as London Square Village.

Articles of Incorporation of Village state purpose of organization to be:

"* * * for those charitable, benevolent and nonprofit purposes hereinabove described and has no stated capital. This corporation shall be without capital stock and no dividends shall be declared nor issued."

The purposes described are:

"(a) To provide, on a nonprofit basis, housing for low and moderate income families displaced from urban areas or as a result of governmental action, where no adequate housing exists for such groups, pursuant to Section 221(d)(3) and Section 236 of the National Housing Act, as amended. [now 12 U.S.C.A. §§ 1715*l* and 1715z–1]

"(b) The Corporation is irrevocably dedicated to, and operated exclusively for, nonprofit purposes; and no part of the income or assests (sic) of the Corporation shall be distributed to, nor inure to the benefit of, any individual."

In furtherance of its stated purpose, Village constructed an apartment complex to provide low cost public housing with assistance of United States Department of Housing and Urban Development [HUD] and Federal Housing Administration [F.H.A.] through Federally guaranteed loans and rent supplements. Apartments are rented to members of public who may make application for financial assistance through "rent supplements." See National Housing Act, 12 U.S.C.A. 1701 et seq. specifically 1715z–1. Prospective renters apply to HUD for supplements which are granted on basis of applicant's ability to pay. Those who are eligible to receive rent supplements are enumerated in 24 C.F.R. § 215.20 and include among others those with limited income who are elderly, physically handicapped, displaced from their homes by urban renewal or disaster, and military personnel on active duty.

Village collects rents from each tenant less amount of supplement received from HUD and from this pays operating expenses and mortgage payments. Since beginning operation there has been no excess of income over expenses, but in event profit might be shown at end of year, under terms of contract between Village and HUD any surplus must be returned to HUD as credit against rent supplements.

Village has been on the county tax rolls from its inception. It now submits that because of its purpose and operation, its property comes directly within purview of 68 O.S.1971 § 2405(h) or (i), as being "used exclusively and directly for charitable purposes within this State," and as such should be exempt from taxation.

Village filed its protest with the County Board of Equalization. The Board acting on advice of district attorney, denied protest and Village initiated present action in district court pursuant to 68 O.S.1971 § 2461. The matter was decided by trial court on plaintiff's stipulation of facts and trial briefs. The court denied Village's petition, holding subject property not exempt from ad valorem taxation. Village appeals to this Court.

Under Art. X § 6 of the Constitution of Oklahoma, all property used exclusively for religious and charitable purposes is exempt from taxation.

68 O.S.1971 § 2405(h)(i) provides:

"The following property shall be exempt from taxation:

* * * * * *

(h) All property of any charitable institution organized or chartered under the laws of this State as a nonprofit or charitable institution, provided the net income from such property is used exclusively within this State for charitable purposes and no part of such income inures to the benefit of any private stockholder, and provided further that its facilities are available to any person regardless of his ability to pay.

(i) All property used exclusively and directly for charitable purposes within this State, provided, the charity using said property does not pay any rent or remuneration to the owner thereof, and

its facilities are open to any person regardless of his ability to pay. * * * "

Whether property is exempt from ad valorem taxation depends on purpose for which it is used and such is a question of fact. *Tulsa County v. St. John's Hospital,* 200 Okl. 176, 191 P.2d 983; *Oklahoma County v. Queen City Lodge No. 197, I.O.O.F.,* 195 Okl. 131, 156 P.2d 340; *Phi Delta Theta v. State,* 175 Okl. 608, 53 P.2d 1129; *Cox v. Dillingham,* 199 Okl. 161, 184 P.2d 976.

In *Tulsa County v. St. John's Hospital,* supra, we quoted from *Farmer's Union Hospital Ass'n of Elk City,* 190 Okl. 661, 126 P.2d 244, as follows:

"There is a wealth of these cases, and a variety of schemes of organizations and methods of operation, and many are held exempt and others not. In all of them there is one factor the presence or absence of which means almost more than anything else in determining the issue. That is this: Are the doors of the hospital open to all, poor patients and pay patients alike? If the answer is yes, it is a charitable hospital and its property is entitled to the exemption from taxation provided; if the answer is no, it is not a charitable hospital and is not entitled to the exemption."

In present case all persons are required to pay rent, rich and poor alike. However, those persons who qualify may receive rent supplements from HUD. Those who are eligible to receive rent supplements are enumerated in 24 C.F.R. § 215.20 and include among others those with limited income who are elderly, physically handicapped, displaced from their homes by urban renewal or disaster, and military personnel on active duty. We agree that low-rent housing for such persons is a worthwhile cause of beneficial interest to society. However, we are of opinion that such housing is not used exclusively for charitable purposes as required by 68 O.S.1971 § 2405(h), (i) when each and every occupant is required to pay for accommodations.

In *Oklahoma County v. Queen City Lodge No. 197, I.O.O.F.,* supra, we cited with approval *Parker v. Quinn, County Treas.,* 23 Utah 332, 64 P. 961, wherein it was said:

" * * * Among the several classes of property exempt are 'lots with buildings thereon used exclusively for either religious worship or charitable purposes.' In the case at bar the relief society which owns and manages the property over which this controversy arose was organized and acts exclusively for charitable purposes. It ministers to the poor, sick, and destitute of the community. Its purposes are excellent, and the means adopted commendable; and, no doubt, the state is measurably benefited by having its poor and helpless subjects under the benign protection and care of such society. If, therefore, in the fundamental law, in addition to specifying lots and buildings thereon used exclusively for charitable purposes, rentals derived from such buildings and used for such purposes were also enumerated, we would have no difficulty in this case in declaring the whole property, including the portion rented and held for rent, exempted from taxation; but the lawmakers did not see fit to exempt such rentals in express terms, and we can furnish no aid by construction. Only such of the society's property, therefore, as is occupied and used exclusively for charitable purposes, is exempt from taxation. It follows that the exemption does not extend to that portion not appropriated by the society to its own use, but held as a source of revenue. * * * "

Other jurisdictions have held that housing projects are not charitable. *Beerman v. Board of Tax Appeals,* 152 Ohio St. 179, 87 N.E.2d 474 [1949]; *Methodist River Oaks Apartments, Inc. v. City of Waco,* 409 S.W.2d 485 [Tex.Civ.App.1966].

Statutes exempting property from taxation are to be strictly construed against exemptions. *Board of Equalization v. Bonner,* 185 Okl. 431, 93 P.2d 1077; *Dairy Queen of Oklahoma v. Oklahoma Tax Commission,* 205 Okl. 473, 238 P.2d 800.

Judgment of trial court affirmed.

HODGES, V. C. J., and DAVISON, IRWIN, LAVENDER and SIMMS, JJ., concur.

WILLIAMS, C. J., and BARNES and DOOLIN, JJ., dissent.

DOOLIN, Justice, dissenting:

I dissent.

This court's opinion enunciates a principle that if a low income person helps himself in any small manner, assistance given to him is not for a charitable purpose. Because a portion of a person's income is paid as rent does not mean he is not in need of or may not be a recipient of "charity." As for example various church or lodge sponsored organizations and hospitals receive non-taxable charitable status even though many of the persons served in such institutions are full or part paying patients or guests.

National Society of the Volunteers of America is a charitable and religious organization similar to such organizations as the Salvation Army. Under its constitution, non-profit corporations throughout the country have been formed "to aid and assist the society in carrying on its religious, benevolent and philanthropic work." London Square Village is one of these corporations. See purpose clause of Articles of Incorporation cited in majority opinion.

Anyone may live in the Village. However only those with an annual income below an established maximum are eligible to receive rent supplements from HUD. Preference is given to applicants with the lowest practicable income limits.

There is no doubt the Oklahoma Constitution mandates an exemption from taxes for all property used exclusively for charitable purposes. Admittedly all non-profit corporations cannot claim exemption, but if it can be shown the *use* of the property is for charitable purposes then the exemption should be allowed.

"Charity" and in consequence "a use for charitable purposes" contemplates a wide spectrum of activities. Tax exemption statutes must be strictly construed, but the policy of this state has been liberal in exempting property of charitable organiza-

tions from taxation. *Oklahoma Tax Commission v. Sisters of Sorrowful Mother,* 186 Okl. 339, 97 P.2d 888 (1940).

"Charitable," defined in its broader sense by this court, comprehends all kindly inclinations which men ought to bear toward one another. *In re Farmers' Union Hospital Association of Elk City,* 190 Okl. 661, 126 P.2d 244 (1942). Charitable purposes means those purposes which benefit an indefinite number of persons either by influence or by relieving their bodies from suffering and constraint. It may, also, mean erecting or maintaining buildings or any other method of lessening the burden on the state to care for and advance the interests of its citizens. Source of the funds for operation is not the sole factor. *American College of Surgeons v. Korzen,* 36 Ill.2d 340, 224 N.E.2d 7 (1967).

The majority is carefully silent as to jurisdictions holding that housing projects do have a charitable purpose, and that it is immaterial that tenants might pay some fractional portion of the rent. *City of Harrisburg v. Presbyterian Apartments,* 18 Pa. Cmwlth. 428, 337 A.2d 297 (1975); *Delmo Housing Corporation v. Finnegan,* 85 F.Supp. 220 (E.D.Mo.1949). Providing low cost housing for people with limited incomes may constitute a public charity even though rent is charged, *if the rents charged are less than rents charged by commercial apartments and if the organization has never taken a profit for private purposes. Four Freedoms House of Philadelphia, Inc. v. City of Philadelphia,* 443 Pa. 215, 279 A.2d 155 (Penn.1971). There the court recognized the possibility, as could be present in Village's case, that if a charitable tax exemption is not allowed, the owner organization may have to either close its doors or increase the rent. Either alternative would frustrate the charitable intention of the organization.

There can be no fixed rule to determine if an organization or its purpose is charitable. But it is academic that charity is not confined to almsgiving or relief of poverty and distress but has a broader signification, embracing the improvement and happiness of man. "A charitable use, where neither law

nor public policy forbids, may be applied to almost anything that tends to promote the well-doing and well-being of social man." *Krause v. Peoria Housing Authority,* 370 Ill. 356, 19 N.E.2d 193 (1939); *Bader Realty & Investment Co. v. St. Louis Housing Authority,* 358 Mo. 747, 217 S.W.2d 489 (1949). I am persuaded by the reasoning of these courts even though here we do not deal with ownership by a housing authority. Although in those cases as well as here, only families of low income may receive *direct* benefit from the housing project, all persons in the community benefit indirectly. Charity of this type tends to be of a most practical character. The above cited jurisdictions hold property held by a housing authority used to provide low rent accommodations is used exclusively for charitable purposes notwithstanding that some rent is charged. Also see *Williamson v. Housing Authority of Augusta,* 186 Ga. 673, 199 S.E. 43 (1938).

*Methodist River Oaks Apartments, Inc. v. City of Waco,* 409 S.W.2d 485 (Tex.Civ.App. 1966) cited by the majority as holding a housing project not to be charitable is readily distinguishable from the present case. There the court held corporation formed by Negro Methodist Church to provide accommodations for families from displaced urban renewal areas was not a "purely public charity" because *the rents paid by the tenants were not lower than equivalent housing,* thus taking no burden from the state.

This is not the case here. The organization was created to implement the charitable purposes of the federal act. It does not charge the tenants for the services it performs in assisting them in obtaining this type housing. What tenants pay is demonstrably and substantially lower than fair market rental value because of the supplements received and anticipated. As yet there has been no operating profit shown and if one should exist in the future it would not be retained by Village.

The purpose of the rent supplement program is to aid qualified persons in obtaining housing while enabling plaintiff to meet its necessary expenses. The rent received is used solely for the benefits of the residents of the Village. Citizens of Oklahoma are the beneficiaries of the project and the use and benefit of the property is limited to "within this State." The fact the direct result of an occasional possible surplus could be more funds for other involved states does not destroy the benefit citizens of Oklahoma receive from such practice in the form of low cost housing. Further, if in the future a profit is realized from the property or use of property becomes noncharitable, tax exempt status will be promptly removed. See 18 O.S.1975 Supp. § 864.

I believe London Square Village, operated by a charitable organization and for the charitable purpose of aiding citizens of Oklahoma by providing low cost housing, meets the constitutional and statutory guidelines for ad valorem tax exemption and I would reverse the district court.

I am authorized to state that Chief Justice WILLIAMS and Justice BARNES join in this dissent.