**INDEPENDENT SCHOOL DISTRICT NO. 9 OF TULSA COUNTY, Oklahoma, a public body corporate, Appellant,**

v.

**Wilson GLASS, in his capacity as County Assessor of Tulsa County, Oklahoma, and as a member of the Board of Tax Roll Corrections; Richard Warner, in his capacity as Chairman of the Tulsa County Board of Tax Roll Corrections; Terry Young, in his capacity as Chairman of the Board of Tulsa County Commissioners and as Chairman of the Tulsa County Board of Tax Roll Corrections; John Cantrell, in his capacity as Tulsa County Treasurer; and Anita Nesbitt, in her capacity as Tulsa County Clerk, Appellees,**

**and**

**Ford Motor Company, Tulsa Junior College, the Board of County Commissioners of Tulsa County, Oklahoma, the Board of County Commissioners of Tulsa County, Oklahoma, on Behalf of the Tulsa City-County Health Department, the Board of County Commissioners of Tulsa County, Oklahoma, on Behalf of the Tulsa City-County Library, and the City of Tulsa, Appellee and Appellant Intervenors.**

No. 53634.

Supreme Court of Oklahoma.

Jan. 12, 1982.

Rosenstein, Fist & Ringold by J. Douglas Mann, Tulsa, for appellant.

Dyer, Powers, Marsh, Turner & Armstrong by Thomas G. Marsh, Tulsa, for appellees and cross appellants, Ford Motor Co. and Wilson Glass, Tulsa County Assessor.

HODGES, Justice.

The question presented is whether Ford Motor Company (Ford), appellee and appellant intervenor, was the recipient of an erroneous tax refund based on a "freeport exemption," pursuant to the Okla.Const.art. 10, § 6A.[1] Independent School District No.

1. The property was tangible personal property used in the construction of automobiles and excluded from ad valorem taxation by the Okla. Const.art. 10, § 6A, which provides:

"All property consigned to a consignee in this State from outside this State to be forwarded to a point outside this State, which is entitled under the tariffs, rules and regulations approved by the Interstate Commerce Commission to be forwarded at through rates from the

9 of Tulsa County, Oklahoma (District) seeks to enjoin the refund.

Ford is a Delaware corporation licensed to do business in Oklahoma. It operates a glass manufacturing plant in Tulsa County, Oklahoma, within the boundaries of Independent School District No. 9, appellant. A portion of Ford's inventory during the 1977 tax year consisted of goods, wares and merchandise purchased outside of Oklahoma and shipped to its Oklahoma plant. This merchandise was held for manufacturing and then shipped, within less than nine months to points outside of Oklahoma. In 1977, Ford did not file a personal property tax return or a written list of its taxable personal property located within Tulsa County before March 15, 1977, as required by 68 O.S. 1971 § 2431.[2] However, Ford did file a rendition with the county assessor before April 10, 1977, which was accepted as being true and correct. The county assessor notified the Tulsa County Board of Equalization (Board) of the assessed value of the property based on Ford's rendition. Ford did not appeal the assessment or valuation of its personal property, nor was the assessment altered by the Board.

On or before the third Monday in June, 1977, the county assessor submitted his abstract of the tax assessment rolls to the State Board of Equalization. No changes were made in the assessed value of Ford's personal property. A certificate of valuation covering Ford's property was issued to the county assessor, who sent a copy to the Tulsa County treasurer. The treasurer submitted an ad valorem tax bill to Ford for $1,265,307.93. This statement included a 10% penalty for late filing. Ford paid one-half of the taxes on January 3, 1978, and the balance on April 3, 1978.

Ford filed a complaint of erroneous assessment and petition for correction of its 1977 personal property taxes with the Tulsa County Board of Tax-Roll Corrections September 26, 1978, seeking a refund of $83,-784.01. Ford claimed that a part of its inventory for 1977, was exempt from taxation under the "freeport exemption." Ford had not claimed the exemption, nor requested the Tulsa County Board of Equalization to review or cancel it prior to filing the complaint. The county assessor notified Ford on October 10, 1978 that his office had determined that the refund should be $92,-167.97.

The Board of Tax-Roll Corrections met to hear Ford's refund request, December 12, 1978. After considering Ford's unreasonable delay and/or fault in discovering and claiming the refund, the Board of Tax-Roll Corrections voted two-to-one to grant Ford's refund request. The refund was increased from $83,784.01 to $92,167.97. It was conceded by all parties at the time of trial that the proper amount of the refund, if owing, is $92,167.97.

The District sought a temporary and permanent injunction to prevent the payment of the refund to Ford. A temporary restraining order was entered by the trial court, but it was dismissed and the permanent injunction denied on April 6, 1979.

It is asserted by the School District that the tax refund was illegal because Ford failed to follow proper procedures and voluntary payment of taxes on exempt property does not justify a refund. Ford counters by contending that the School District has no standing to prosecute the appeal and that it may not collaterally attack the decision of the Board of Tax-Roll Corrections. Because the issue of standing is critical to

---

point of origin to the point of destination, if not detained within this State for a period of more than ninety (90) days, shall be deemed to be property moving in interstate commerce, and no such property shall be subject to taxation in this State; provided, that goods, wares and merchandise whether or not moving on through rates, shall be deemed to move in interstate commerce, and not subject to taxation in this State if not detained more than nine (9) months where such goods, wares and merchan-

dise are so held for assembly, storage, manufacturing, processing or fabricating purposes; provided, further, that personal property consigned for sale within this State must be assessed as any other personal property."

2. If a taxpayer fails to meet the county assessor and list his property on the date advertised, he may, pursuant to 68 O.S.1971 § 2431, list his property on forms prescribed by the Tax Commission on or before March 15.

the prosecution of the appeal by the District, it must be resolved before the merits can be reached.

## I

■ Standing has traditionally been defined as whether a party has a sufficient interest in an otherwise justiciable controversy to obtain judicial resolution of the controversy. If reliance is not placed on any specific statute authorizing invocation of the judicial process, the question of standing depends upon whether the party has alleged a personal stake in the outcome of the controversy.[3] Ford contends that the School District lacks standing to enjoin the refund because 68 O.S.Supp. 1974 § 2479[4] authorizes only the taxpayer and the County Assessor to seek review of the Board's decision. Ford's position would be tenable if the District sought to avail itself of the statutory remedy of a trial de novo. The issue is not under-assessment or non-assessment. The District is not appealing the decision of the Board, nor is it seeking a trial de novo. Rather, it seeks to prevent what it characterizes as an illegal refund of public funds which has been erroneously authorized by the Board. The District asserts that it has a direct and pecuniary interest in the refund, and that it seeks to protect its revenues from the illegal and arbitrary action of the Board.

■ A litigant must have the capacity to sue in order to be entitled to injunctive relief. When a remedy for any particular wrong or injury has been provided by statute, generally no redress can be afforded by injunction. In the absence of a constitutional violation, before a statutory remedy will preclude a suit for injunctive relief, the statutory provision must provide for a speedy, complete, convenient and beneficial relief. If the statutory remedy is obviously inadequate, injunction may lie.[5] A party must assert his/her own legal rights and interests and cannot rest a claim for relief on the rights or interests of third parties.[6]

■ A violation of a state statute is an injury to the State and its citizens. A continuing violation is an irreparable injury for which injunctive relief is available.[7] However, standing does not depend on the merits of the plaintiff's contention that particular conduct is illegal.[8] Before a litigant possesses standing as a proper party to seek injunctive relief, it must be alleged that: the challenged action has caused him/her injury in fact; the relief sought would remedy the injury; and, the interest sought to be protected is within the zone of interest to be protected or regulated by the statute in question. For purposes of ruling on a motion to dismiss for lack of standing, the trial court and the reviewing court must construe the petition in favor of the complaining party. It is not necessary to decide whether a litigant will ultimately be entitled to any relief in order to hold that the party has standing to seek judicial redress for his/her grievance. The proper inquiry concerning standing is whether the plaintiff has in fact suffered injury to a legally protected interest as contemplated by statutory or constitutional provisions. If he has not, standing does not exist, and the case must be dismissed. If standing exists, the case must proceed on the merits.[9]

---

3. *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663, 678 (1962).

4. It is provided by the ultimate paragraph of 68 O.S.Supp. 1974 § 2479:

   "Both the taxpayer and the county assessor shall have the right of appeal from any order of the Board of Tax-Roll Corrections to the District Court of the same county. In case of appeal the trial in the District Court shall be de novo."

5. *Baker v. Lloyd*, 198 Okl. 512, 179 P.2d 913, 915 (1947); *City of Independence v. Hindenach*, 144 Kan. 414, 61 P.2d 124, 128 (1936).

6. *Warth v. Sedlin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343, 355 (1975).

7. *Semke v. State*, 465 P.2d 441, 445 (Okl.1970).

8. *Sierra Club v. Morton*, 405 U.S. 727, 732, 92 S.Ct. 1361, 1364, 31 L.Ed.2d 636 (1972).

9. *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Association of Data Processing Service Organization, Inc. v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404, 417 (1969); *Baker v. Carr*, supra.

We agree with the District that it has standing to seek injunctive relief. The District has an interest in the subject matter, the capacity to sue, and the power to protect and prevent the wrongful disposition of revenues.[10]

## II

The District asserts that Ford is not entitled to a refund of personal property taxes because it failed to show good cause for failing to appear before the Board of Equalization prior to filing its claim with the Board of Tax-Roll Corrections. It argues that failure to follow the statutory guidelines places Ford in a fatal procedural posture. Ford counters that showing good cause is not a requirement if the property is constitutionally exempt. We must agree with Ford.

Property is never exempt from taxation except by a special and definite provision of law.[11] Unless the constitutional provision which grants the exemptions is self-executing, the Legislature may qualify, curtail or annul any exemption. Constitutional provisions which exempt certain classes of property or those which direct that the Legislature shall not tax designated property are self-executing.[12] These provisions are operative without supplemental or enabling legislation. The Legislature may not abridge or extend a constitutional provision which is a self-executing grant of power to the taxpayers if the provision is self-complete.[13] Provisions which authorize the Legislature to exempt specified classes of property or requiring the exemption by enactment of general laws are not self-executing or operative until the necessary legislation is enacted. The Legislature can not grant exemptions which are constitutionally unrecognized or enlarge constitutional exemptions.[14] Nor may the Legislature require a certain procedure to be followed in claiming the exemption which will nullify the exemption and validate an illegal tax.[15] Art. 10, § 6A which grants the freeport exemption is self-executing. Because the constitutional provision is self-executing, the property is not subject to taxation and the tax assessed was illegal and void. Voluntary payment by the taxpayer of an invalid tax does not constitute a waiver or ratify the tax if a timely application for a refund is filed in accordance with 68 O.S. Supp. 1974 § 2479.[16]

## III

Section 2479 provides that a taxpayer who has paid taxes erroneously or mistakenly may file for a refund any time within one year of the payment of the tax. Failure to assert the claim within the prescribed period may terminate the right to claim the exemption.[17] The School District concedes that the property was exempt and that even though a rendition was filed by Ford and the tax paid, Ford could have

10. *School Dist. No. 74, Kingfisher Co. v. Long*, 2 Okl. 460, 37 P. 601 (1894).

11. Okl.Const.art. 5, § 50.
*City of Idabel v. School Dist. No. 5 of McCurtain County*, 434 P.2d 285, 287 (Okl.1967).

12. *City of Hartshorne v. Dickinson*, 207 Okl. 305, 249 P.2d 422, 424 (1952).

13. *Williams v. City of Norman*, 85 Okl. 230, 205 P. 144, 147 (1922).

14. *County Assessor, Okla. Co. v. United Broth. of Carpenters and Joiners of America Local No. 329*, 202 Okl. 162, 211 P.2d 790, 794 (1949).

15. See *Cox v. Dillingham*, 199 Okl. 161, 184 P.2d 976, 980 (1947).

16. It is provided by 68 O.S.Supp. 1974 § 2479(17)(2) in pertinent part:

"If, prior to such hearing by the Board as aforesaid, the tax has been paid, no certificate shall issue; but if less than one (1) year shall have elapsed after the payment of the tax and before the filing of such application for correction of error, and after such hearing the findings of fact disclose that less tax was due to have been paid than was paid, then the person who paid the tax, or his heirs, successors, or assigns, may execute a case voucher claim setting forth facts and findings, verify it, and file it with the county clerk, who shall thereupon deliver such claim to the county treasurer for designation of the fund from which the claim must be paid and approval of the claim as to availability of funds by the county treasurer."

17. *Colbert v. Roodhouse*, 279 P.2d 349, 354 (Okl.1955) cert. den'd 349 U.S. 939, 75 S.Ct. 782, 99 L.Ed. 1266 (1955).

recovered had it timely sought a refund. It is contended that failure to seek a refund within one year from the filing of the rendition negates the opportunity for a refund.

 Inventory of goods, wares and merchandise owned by a manufacturer and shipped to a manufacturer within the state from outside the state which are processed by the manufacturer within nine months are constitutionally exempt from personal property taxation.[18] The Legislature may not impair, limit or destroy rights created by constitutional exemptions nor impose any new or additional conditions as a prerequisite to the exemption granted by the Constitution.[19] Property of the kind designated by § 6A is not taxable and no legislation is necessary to exempt it. The assessor may ascertain certain facts concerning the property just as he/she can do with any other property. However, if the property is erroneously or wrongfully in the assessment roll, the action does not make it taxable. Likewise, the erroneous listing of exempt property by a taxpayer of exempt property does not render it taxable if the taxpayer takes timely remedial action to rectify the error. The taxpayer may lose his remedy by inaction, but failure to seek relief does not validate the assessment. A statute of limitations may be imposed on an action to recover the tax paid, but failure to prove the nature and use of the property before the assessment roll is formulated does not validate an unauthorized and illegal tax.[20]

The Board is incorrect in asserting that the time of filing of the rendition is determinative of the issue. The statute, § 2479, clearly provides that the critical time period is less than one year after the *payment* of the tax. Ford claimed reimbursement within one year of payment. The taxes were paid in January and April of 1978 and reimbursement was timely sought in September, 1978.

## IV

 The District also argues that Ford was required to exhaust its remedies before the Tulsa County Board of Equalization. We cannot agree. The Board of Tax-Roll Corrections has jurisdiction to determine if a taxable unit is exempt from ad valorem taxation. One of the purposes of § 2479 is to eliminate the necessity of payment of taxes under protest where notice is not received that exempt property has been assessed until after the Board of Corrections has adjourned.[21] We fail to see why the expensive and complicated process must be followed when a simplified procedure is provided by § 2479.

AFFIRMED.

BARNES, V.C.J., and SIMMS, DOOLIN and HARGRAVE, JJ., concur.

OPALA, J., concurs in part, dissents in part.

IRWIN, C.J., and LAVENDER, J., dissent.

---

18. *In the Matter of the Assessment of 1969 of Cresent Precision Products, Inc.,* 514 P.2d 933, 935 (Okl.1973).

19. *Williams v. City of Norman,* 147 supra.

20. *St. John's Church v. Los Angeles Co.,* 5 Cal.App.2d 235, 42 P.2d 1093, 1095 (1935).

21. *City of Hartshorne v. Dickinson,* supra.