957 P.2d 107 (1998)
1998 OK 26
MUSKOGEE FAIR HAVEN MANOR PHASE I, INC., Muskogee Fair Haven Manor Phase II, Inc., Muskogee Fair Haven Manor Phase III, Inc., Muskogee Fair Haven Manor Phase IV, Inc., Appellees,
v.
Jackie SCOTT, County Assessor of Muskogee County, Oklahoma, Appellant.
No. 86993.
Supreme Court of Oklahoma.
March 31, 1998.
Angela M. Risenhoover, Assistant District Attorney, Muskogee, for Appellant.
Clifford K. Cate, Jr. of Boesche, McDermott & Eskridge, Muskogee, and William K. Elias and Frank H. McGregor of McKenzie, Moffett, Elias & Books, P.C., Oklahoma City, for Appellees.
*108 LAVENDER, Justice.
¶ 1 The dispositive issue is whether the district court has jurisdiction to grant declaratory relief to a taxpayer who, without first invoking any judicial remedy provided in the Ad Valorem Tax Code, commences an action, challenging the county assessor's refusal to recognize an exemption claimed under a self-executing provision of the Oklahoma Constitution. We answer in the negative and hold that the legislatively prescribed judicial remedies afforded to these taxpayers under the Code are adequate and exclusive, and that the district court therefore lacked subject matter jurisdiction to entertain their declaratory judgment action.
¶ 2 Owners of an allegedly nonprofit housing project, providing subsidized and minimally-priced housing for elderly and handicapped people, were notified in 1994 by the County Assessor of Muskogee County, Jackie Scott, that their property would no *109 longer be listed on the tax rolls as exempt.[1] They had acquired the property during the previous year and allegedly continued to use it as the previous owner did for "charitable purposes" within the meaning of 68 O.S.1991 § 2887(9).[2]
¶ 3 In response to the assessor's notice the owners lodged a complaint pursuant to 68 O.S.1991 § 2876(D),[3] which gives taxpayers 20 days to object in writing to an action taken by the county assessor. The latter held a hearing and denied the owners' protest. They then appealed to the county board of equalization, which also ruled against them.[4] The terms of 68 O.S.1991 § 2880.1 give taxpayers and county assessors the right to appeal to the district court from an order of the county board of equalization within 10 days after final adjournment of the board.[5] In cases where "the illegality of the tax is alleged to arise by reason of some action from which the laws provide no appeal, the aggrieved person shall pay the full amount of the taxes at the time and in the manner provided by law, and shall give notice to the officer collecting the taxes showing the grounds of complaint and that suit will be brought against the officer for recovery of them." (Emphasis added.) 68 O.S.1991 § 2886(A).
¶ 4 The owners complied with neither § 2880.1 nor § 2886. Instead, in October 1994, several months after the board's decision, they sought declaratory relief in the district court, alleging that the county assessor, "through [the] Muskogee County Board of Equalization," refuses to recognize the exempt status of their property, despite its *110 nonprofit, charitable use. In May 1995 the trial court approved a partial compromise reached by the parties, whereby the owners agreed to pay the 1994 ad valorem tax without admitting to its validity, and the controversy would be converted into an appeal from a hypothetical adverse ruling by the board of equalization regarding the 1995 assessment.[6]
¶ 5 A hearing was eventually held in August 1995 to determine whether the property is exempt. Before evidence was introduced, however, counsel for the county assessor objected to the trial court's exercise of jurisdiction and argued that the county assessor had never agreed to the terms of the compromise that had earlier been approved by the court. The trial judge rejected counsel's assertions and allowed the owners to proceed.
¶ 6 At the hearing's conclusion the trial court declared the property exempt, finding that it is "used exclusively for charitable purposes and that the facilities operated by Plaintiffs are open to any person regardless of ability to pay." The court also found "no evidence that the owners received any remuneration." The county assessor appealed.
¶ 7 Only one issue was raised on appeal  whether the trial court had jurisdiction to resolve the exemption issue. The basis for asserting lack of jurisdiction was the owners' failure to appeal to the district court under § 2880.1.[7] In support of the exclusiveness of this statutorily prescribed judicial remedy the county assessor relied solely on the terms of 68 O.S.1991 § 2885(A):
A. The proceedings before the county assessor, boards of equalization and appeals therefrom shall be the sole method by which assessments or equalizations shall be corrected or taxes abated. Equitable remedies shall be resorted to only where the aggrieved party has no taxable property within the tax district of which complaint is made. (Emphasis added.)
The owners responded by arguing that the pre-trial agreement was merely procedural (analogous to waiving jury trial) and that the county assessor is either bound by the agreement or estopped from denying its effectiveness.
¶ 8 The Court of Civil Appeals, in a 2-1 decision, agreed with the county assessor, holding that "[b]y express language, the Legislature has chosen to deny jurisdiction to the District Court to hear such matters in the absence of compliance with these procedures." The appellate court also took note of an issue raised by the dissent  whether the self-executing constitutional provision upon which the claimed exemption is based frees *111 the owners from the effects of the remedial restrictions prescribed by § 2885(A). Because this "constitutional" issue was not raised in the trial court or on appeal, the appellate court declined to address it.
¶ 9 The owners sought certiorari, arguing that the statutory provisions to which the appellate court referred in its opinion, 68 O.S.1991 §§ 2876, 2877, and 2880.1, do not apply to assessments upon constitutionally exempt property. Those sections are said to address only valuations of real and personal property and the addition or assessment of personal property not listed by the taxpayer. Next, the owners argue that the terms of both § 2885(A) and § 2886 "provide a more appropriate alternative basis for jurisdiction in the District Court." Their final contention is identical to the view expressed by the dissent.
¶ 10 The first issue raised by the owners is whether the statutorily prescribed avenues of complaint before the county assessor and the board of equalization (and appeals therefrom) are applicable to their claim. They are correct in their observation that the language of the statutory remedies to which they refer, in §§ 2876, 2877, and 2880.1 (quoted in part in notes 3, 4, and 5, respectively), indicates a primary concern with changes (or increases) in valuations of real property, as opposed to changes in taxable status. We note, however, that the owners themselves, in response to the county assessor's notice, asserted their exemption and sought a hearing. The county assessor, who is charged with the duty of preparing the tax rolls and listing exempt property, 68 O.S.1991 § 2868(D), ruled against them. They then appealed to the county board of equalization, which is required to "cancel assessments of property not taxable." 68 O.S.1991 § 2863(B)(3). No appeal was brought from the board's adverse decision pursuant to § 2880.1.
¶ 11 Appealing from the board's ruling, then, was an option for the owners. They could have also complained to the board of tax roll corrections under § 2871(C)(2), the terms of which explicitly authorize the board to determine whether "[p]roperty exempt from taxation has been assessed...." The right of the taxpayer and the county assessor to appeal from decisions of this board to the district court is authorized by § 2871(F).[8] For reasons explained infra, the owners need not have complied with these statutory remedies before seeking judicial relief.
¶ 12 With respect to § 2885(A) the owners rely on its reference to "[e]quitable remedies . . . where the aggrieved party has no taxable property within the tax district. . . ." They maintain that they qualify for equitable relief because the trial court declared their property to be exempt and therefore nontaxable. We reject this argument for three reasons. The first is that the owners did not seek equitable relief from the trial judge, and none was granted. Secondly, the "equitable remedies" to which the owners refer under § 2885(A) are affordable when the aggrieved party has no taxable property situated within the tax district, and even then, equity will not, for example, reverse the effects of a voluntary payment of taxes under a mutual mistake of fact, where the taxpayer could have earlier discovered the error and sought its correction. Edwards v. Board of Com'rs, 169 Okla. 87, 36 P.2d 6 (1934) (the Court's syllabus). Finally, a judge's powers in equity are not invocable when clear and adequate statutory remedies are available. Whig Syndicate, Inc. v. Keyes, 1992 OK 95, 836 P.2d 1283, 1288; Billingsley v. North, 298 P.2d 418, 421-422 (Okla.1956). We now address the main issue in this cause.
¶ 13 The "constitutionality of § 2885(A)," as the appellate court phrased the issue, is not at stake. The prime question is one of subject matter jurisdiction, which can be raised sua sponte, and this Court is duty-bound to inquire into the jurisdiction of the court from whence the decision came. Lincoln Bank and Trust Co. v. Okla. Tax Com'n, 1992 OK 22, 827 P.2d 1314, 1318. Even if the constitutional issue were before us, our duty to address it would not depend on the public interest or welfare, because the *112 underlying question is jurisdictional.[9]
¶ 14 Although codified in § 2887 (see note 2, supra), the exemption claimed by the owners is mandated by the Oklahoma Constitution, Art. 10 § 6:
(a) Except as otherwise provided in subsection (b) of this section, all property used for free public libraries, free museums, public cemeteries, property used exclusively for nonprofit schools and colleges, and all property used exclusively for religious and charitable purposes . . . shall be exempt from taxation. ... (Emphasis added.)
This Court has long held this provision to be self-executing. See Cox v. Dillingham, 199 Okla. 161, 184 P.2d 976, 980 (1947); City of Hartshorne v. Dickinson, 207 Okla. 305, 249 P.2d 422, 424 (1952); As such it is "operative without supplemental or enabling legislation," Independent School Dist. No. 9 v. Glass, 1982 OK 2, 639 P.2d 1233, 1238, and its object is thus placed beyond the power of the legislature to nullify by failing to enact laws to carry it into effect. Wren v. Dixon, 40 Nev. 170, 161 P. 722, 730 (1916).
¶ 15 A tax upon property exempt from taxation by virtue of a self-executing constitutional provision is "illegal and void." Cox, supra; City of Hartshorne, supra; Glass, supra. Application of this principle in Cox produced the following holding, which might appear at first glance to support the owners' quest for declaratory relief: "If, by reason of the constitutional exemption, property is not taxable county officials have no jurisdiction or power to levy a tax against the same, and any levy so made is void. If the levy is void the statutory proceeding by appeal from the Board of Equalization is not exclusive." (Emphasis added.) 184 P.2d at 977 (the Court's syllabus ¶ 3). A closer look at this case, however, reveals that it provides no support for the owners' position.
¶ 16 In Cox the taxpayer, without appealing from the board of equalization's ruling, sued the county treasurer to recover taxes paid under protest on property claimed to be exempt under Art. 10 § 6. From an order dismissing the action for want of jurisdiction the taxpayer appealed. This Court reversed, rejecting the treasurer's contention that the taxpayer had an adequate remedy under 68 O.S.1941 §§ 15.41 and 15.49, whose provisions are now found, in substantial part, in §§ 2876 and 2885, respectively. The self-executing constitutional provision freed the taxpayer from the requirements of statutory procedures intended to be followed in asserting the exemption. This Court thus held that an assessment  invalid under Art. 10 § 6  is not made valid by a taxpayer's failure to appeal from a ruling of either the county assessor or the board of equalization. An aggrieved party claiming the constitutional exemption may, as the taxpayer did in Cox, timely pay the tax and sue for a refund.[10]Cox therefore does not stand for the proposition that the legislature is prohibited from enacting judicial remedies for challenging an allegedly illegal, void, or unconstitutional assessment.
¶ 17 The record in the instant cause is devoid of any indication, and the owners do not contend, that § 2886, for example, would not have provided them a clear and adequate remedy. Self-executing constitutional provisions generally do not preclude the legislature from prescribing judicial remedies. Indeed, Oklahoma's statutory procedure for seeking judicial relief from an illegal tax has, *113 since its initial enactment in 1915,[11] been upheld as a plain, speedy, adequate, and exclusive remedy within the legislative power to prescribe. See Black v. Geissler, 58 Okla. 335, 159 P. 1124, 1126 (1916); Atchison, T. & S.F. Ry. Co. v. Eldredge, 65 Okla. 317, 166 P. 1085, 1087 (1917); Parkinson v. Valente, 326 P.2d 826, 828 (Okla.1958); United Airlines, Inc. v. State Bd. of Equalization, 1990 OK 29, 789 P.2d 1305, 1308.[12]
¶ 18 The instant controversy presents no occasion for this Court to create an alternative remedy. See R.R. Tway, Inc. v. Oklahoma Tax Commission, 1995 OK 129, 910 P.2d 972, 979, where we refused to refashion a judicial tax-refund remedy, because the taxpayer failed to avail himself of his statutory (or administrative) remedies. This is not a case in which no statutory appeal process was available (see Cantrell v. Sanders, 1980 OK 43, 610 P.2d 227, 229), nor is it one in which declaratory and injunctive relief was sought after paying an allegedly illegal tax under protest pursuant to § 2469 (currently § 2886) (see United Airlines, Inc. v. State Bd. of Equalization, supra). Here, the owners were faced with an allegedly illegal tax, and they neither appealed from the board's adverse ruling under § 2880.1 nor paid the tax under protest and sued for a refund pursuant to § 2886. The district court therefore lacked jurisdiction to grant them declaratory relief.[13]
¶ 19 Today's pronouncement is consistent with our recent holdings in Stallings v. Oklahoma Tax Commission, 1994 OK 99, 880 P.2d 912, 918, and Glass, supra. In Stallings the taxpayer instituted an action to recover taxes paid but allegedly collected in violation of federal constitutional and statutory law. We held that the district court lacked subject matter jurisdiction because the taxpayer failed to satisfy the statutory prerequisites for invoking the district court's cognizance.
¶ 20 In Glass the taxpayer brought a complaint before the board of tax roll corrections and prevailed in his quest for a refund based on the self-executing constitutional exemption in Art. 10 § 6A (for "goods, wares and merchandise" used for manufacturing *114 within nine months of shipment to the taxpayer). The school district affected by the decision sued the board and the taxpayer, seeking to enjoin payment of the refund. We rejected the district's contention that the taxpayer should have first complained to the board of equalization and held that the assessed tax was "illegal and void" and that "[v]oluntary payment by the taxpayer of an invalid tax does not constitute a waiver or ratify the tax if a timely application for a refund is filed in accordance with 68 O.S.Supp.1974 § 2479 [now § 2871]." (Emphasis added and footnote omitted.) 639 P.2d at 1238. We further concluded that "[a] statute of limitations may be imposed on an action to recover the tax paid, but failure to prove the nature and use of the property before the assessment roll is formulated does not validate an unauthorized and illegal tax." (Footnote omitted.) 639 P.2d at 1239.[14] See also Redbird v. Oklahoma Tax Commission, 1997 OK 126, 947 P.2d 525, 529, where a state statute of limitations barred the taxpayers' refund claim founded on a federal exemption of Indian land from taxation, and California v. Grace Brethren Church, 457 U.S. 393, 417-418, 102 S.Ct. 2498, 2512-2513, 73 L.Ed.2d 93 (1982), where state law afforded the taxpayer a "plain, speedy and efficient" remedy and thereby deprived the federal district court of jurisdiction to grant injunctive and declaratory relief from enforcement of an allegedly unconstitutional tax.
¶ 21 For the foregoing reasons, the Court of Civil Appeals' memorandum opinion is VACATED, the trial court's judgment is REVERSED, and the cause is REMANDED WITH DIRECTIONS TO DISMISS FOR WANT OF SUBJECT MATTER JURISDICTION.
¶ 22 KAUGER, C.J., and HODGES, HARGRAVE, ALMA WILSON and WATT, JJ., concur.
¶ 23 SIMMS and OPALA, JJ., concur in result.
¶ 24 SUMMERS, V.C.J., not voting.
NOTES
[1] The "owners" are Muskogee Fair Haven Manor Phase I, Inc., Muskogee Fair Haven Manor Phase II, Inc., Muskogee Fair Haven Manor Phase III, Inc., and Muskogee Fair Haven Manor Phase IV, Inc. From their pleadings it appears that these entities together own a single facility on property claimed to be exempt under 68 O.S.1991 § 2887(9), quoted in note 2, infra.
[2] Section 2887(9), before it was amended in 1996, provided:

The following property shall be exempt from ad valorem taxation:
* * *
9. All property used exclusively and directly for charitable purposes within this state, provided the charity using said property did not pay any rent or remuneration to the owner thereof, and its facilities are open to any person regardless of his ability to pay; * * *.
The amendment, Okla.Sess.L.1996, Ch. 187, § 1, which alters the proviso, has no effect on this opinion.
[3] Section 2876(D) provides:

* * *
D. The taxpayer shall have twenty (20) calendar days from the date the notice was mailed or in the event that notice was delivered from the date of delivery in which to file a written complaint with the county assessor specifying objections to action taken by the county assessor....
[4] The owners' presumably appealed within the 10-day period prescribed by § 2876(F). The board's power to review an action by the county assessor is set forth in 68 O.S.1991 § 2877(A), which provides:

A. Upon receipt of an appeal from action by the county assessor the secretary of the county board of equalization shall fix a date of hearing, at which time said board shall be authorized and empowered to take evidence pertinent to said appeal; and for that purpose, is authorized to compel the attendance of witnesses and the production of books, records, and papers by subpoena, and to confirm, correct, or adjust the valuation of real or personal property or to cancel an assessment of personal property added by the assessor not listed by the taxpayer if the personal property is not subject to taxation or if the taxpayer is not responsible for payment of ad valorem taxes on such property. * * *
[5] Section 2880.1 provides in pertinent part:

A. Both the taxpayer and the county assessor shall have the right of appeal from any order of the county board of equalization to the district court of the same county, and right of appeal of either may be either upon questions of law or fact including value, or upon both questions of law and fact. In case of appeal the trial in the district court shall be de novo.
B. Notice of appeal shall be filed with the county clerk as secretary of the county board of equalization, which appeal shall be filed in the district court within ten (10) days after the final adjournment of the board. It shall be the duty of the county clerk to preserve all complaints and to make a record of all orders of the board and both the complaint and orders shall be a part of the record in any case appealed to the district court from the county board of equalization.
C. Either the taxpayer or the county assessor may appeal from the district court to the Supreme Court, as provided for in the Code of Civil Procedure, but no matter shall be reviewed on such appeal which was not presented to the district court.
* * *
[6] The terms of the agreement, as related by the trial court, are:

* * *
1. That Plaintiffs shall be and are hereby required to pay the 1994 ad valorem tax assessed by Defendant on the property which is the subject hereof. Payment by Plaintiff shall in no way constitute an admission that [the] tax was validly levied []or assessed.
2. That Plaintiffs shall be deemed to have filed, in a timely manner, a complaint to the assessment of ad valorem taxes against the subject property for the year 1995 for the reason and on the grounds as stated in Plaintiff[s'] Petition on file herein.
3. That Plaintiff[s'] `Complaint' as to assessment of 1995 taxes shall be deemed to have been denied by the county Assessor and appeal therefrom shall be deemed to have been denied by the County Board of Equalization. Filing of the initial action shall be considered a timely notice of appeal from the actions of the County Board of Equalization.
4. All parties and subject matter are properly before this Court and the Court may proceed to determination of the action on the merits. * * *
Without question subject matter jurisdiction may not be conferred on the trial court by agreement, whether judicially approved or not. Barrett v. Barrett, 1994 OK 92, 878 P.2d 1051, 1054; City of Clinton ex rel. Richardson v. Cornell, 191 Okla. 600, 132 P.2d 340, 343 (1942). We, however, do not concern ourselves with any issues regarding error or validity in connection with either the agreement or its approval by the trial court, because today's holding makes those issues immaterial. Suffice it to say that the absence of power to entertain an action includes the lack of power to issue an order in the same action approving an agreement by the parties concerning the procedural or jurisdictional posture of the case. As for the ruling from which the county assessor appealed, the journal entry purports to grant only declaratory relief and makes no reference to any supposed appeal from a ruling by the board of equalization. For purposes of this opinion we treat the decision as a declaratory judgment.
[7] Section 2880.1 is quoted in part at note 5, supra.
[8] We have recognized the concept of overlapping jurisdiction in this context. See Oklahoma Industries Authority v. Barnes, 1988 OK 98, 769 P.2d 115, 123.
[9] See Simons v. Brashears Transfer & Storage, 344 P.2d 1107, 1108-1109 (Okla.1959) (the Court's syllabus ¶ 5), which holds that "[w]here the alleged unconstitutionality of a statute that does not involve the jurisdiction of the court is raised for the first time on motion for new trial, and the motion for new trial is denied, we will not consider the constitutional question on appeal unless the public interest and welfare requires it." (Emphasis added.)
[10] Accord Huston v. Curtis Cos., 160 Okla. 216, 16 P.2d 874 (1932), and Keaton v. Bonaparte, 174 Okla. 316, 50 P.2d 404 (1935). The taxpayer in each of those cases failed to invoke the district court's jurisdiction, even though he had paid the taxes under protest and sued for a refund pursuant to statute. Because no illegal taxes were assessed, and the challenged assessments were simply erroneous, inequitable, or excessive, the taxpayer "could not resort to the courts in the first instance" and was required to avail himself of the applicable statutory remedies by proceedings before the board of equalization.
[11] See S.L.1915, p. 149, c. 107, sec. 7; Comp.Stat.1921 § 9971; 68 O.S.1941 § 15.50; 68 O.S.Supp.1965 § 2469; 68 O.S.Supp.1988 § 2886.
[12] In United Airlines we expressly recognized that where a taxpayer questions whether its property should be assessed at all, the issue "would more naturally fall under Section 2469 [now § 2886] because no statutory provision sets forth the procedure for appealing an assessment made beyond the jurisdiction of the boards." 789 P.2d 1305, 1308. See also State v. Hooker, 22 Okla. 712, 98 P. 964, 965 (1908) (the Court's syllabus ¶¶ 4 and 5), holding that even though a constitutional provision is self-executing, legislation may be desirable "to provide a more specific and convenient remedy for carrying out such provision," and Calhoun v. Flynn, 37 Ariz. 62, 289 P. 157, 159 (1930), overruled on other grounds, State v. Allred, 67 Ariz. 320, 195 P.2d 163 (1948), where, in reference to a self-executing constitutional provision, the Supreme Court of Arizona stated: "There is no question of such person's right to the exemption; it is a question of remedy. The Legislature has fixed the remedy, and the courts are bound thereby."
[13] Our resolution of the jurisdictional issue in this case requires us to disapprove an opinion by the Court of Civil Appeals, Staggs v. Porter, 1995 OK CIV APP 55, 897 P.2d 1147, 1150. There, the board of equalization had denied the taxpayer's exemption claim under Art. 10 § 6, and, instead of invoking any of the available remedies in §§ 2863, 2871, or 2886, the taxpayer brought suit to enjoin enforcement. The appellate court held that "injunction is a proper remedy to prevent enforcement of a tax upon exempt property," relying on Cox v. Dillingham, which we explain in this opinion, and Walker v. Hays, 127 Okla. 123, 260 P. 15 (1927), which is also cited in Cox.

In Walker the taxpayer, claiming the assessed property is not taxable under federal law, obtained an injunction preventing the property's sale. This Court affirmed, holding that failure to appeal from the decision placing the property on the tax rolls did not deprive the district court of jurisdiction. Although the opinion emphasizes the lack of the taxing officials' authority to levy the illegal tax, it should be noted that the taxpayer, before bringing suit, had obtained a favorable ruling by the county commissioners, who ordered the property removed from the tax rolls. The taxing officials appealed from this ruling but nevertheless immediately advertized the property for sale. This precipitated the taxpayer's suit for an injunction. Clearly, the exigent circumstances there made the other statutory avenues of relief inadequate. Walker, therefore, does not support the notion that a taxpayer may do nothing after being faced with adverse administrative rulings and, at the last minute, seek an injunction restraining the collection of an allegedly illegal or void tax.
[14] The opinion in Presbyterian Hosp., Inc. v. Bd. of Tax-Roll Corr., 1984 OK 93, 693 P.2d 611, however, is problematic. The taxpayers there had paid the tax assessed in one year and sought a refund by an appeal to the district court from a ruling of the board of tax roll corrections. They amended their petition to include two subsequent years of taxes, and the trial court eventually gave them summary judgment, determining that the assessments were void under Art. 10 § 6. On appeal the county argued that the trial court lacked subject matter jurisdiction because the taxpayers failed to comply with the terms of 68 O.S.1981 § 24342 (now § 3138), which governs "any action or proceeding ... before any court or judge to prevent or to restrain the collection of any tax ... or to recover any such tax previously paid...." The statute also provided that "the true and just amount of taxes due upon such property, ... if in dispute, must be ascertained and paid before judgment prayed for ...."

The Court affirmed the summary judgment, holding that the trial court had jurisdiction to grant full relief despite the taxpayers' failure to comply with statutory prerequisites. 693 P.2d at 617. The unusual circumstances that led to this decision were: (a) The taxpayers had appealed from a decision by the board of tax roll corrections, (b) the statute upon which the county relied (§ 24342) did not require payment of the taxes before bringing suit, (c) the trial court's determination that the property was exempt became the law of the case, made the assessment void, and eliminated any obligation to pay the taxes, and (d) the county failed to object to the petition's amendments adding the two subsequent assessments. Presbyterian Hosp.'s holding is thus limited to its unique facts.