Dear Representative Winchester,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
1. If a church allows its facility to be used for meetings andseminars conducted by nonreligious, nonprofit entities, may thechurch retain the ad valorem tax exemption provided by Okla.Const. art. X, § 6 and 68 O.S. Supp. 2000, § 2887(7)?
 2. If a church may allow its facility to be used for meetingsand seminars conducted by nonreligious, nonprofit entities andretain its ad valorem tax exemption, may it charge a fee for saiduse?
 3. If a church allows its facility to be used for meetings,seminars and conventions conducted by non-political entities, maythe church retain the ad valorem tax exemption provided by Okla.Const. art. X, § 6 and 68 O.S. Supp. 2000, § 2887(7)?
 4. If a church may allow its facility to be used for meetings,seminars and conventions conducted by non-political entities andretain its ad valorem tax exemption, may it charge a fee for saiduse?
 5. If a church allows its facility to be used as a pollingplace, may the church retain the ad valorem tax exemptionprovided by Okla. Const. art. X, § 6 and 68 O.S. Supp. 2000, §2887(7)?
 6. If a church may allow its facility to be used as a pollingplace and retain its ad valorem tax exemption, may it charge afee for said use?
 A. Overview of Religious Use Exemption
¶ 1 All property "used exclusively and directly for fraternal or religious purposes within this state" is exempt from ad valorem taxes. 68 O.S. Supp. 2000, § 2887[68-2887](7). The Oklahoma Constitution prohibits the Legislature from passing any law exempting any property from taxation, except as provided in the Constitution. See Okla. Const. art. V, § 50. The Constitution includes an ad valorem tax exemption for "all property used exclusively for religious and charitable purposes." Okla. Const. art. X, § 6(a). Self-executing constitutional exemptions, such as Article X, § 6, are accorded special protection from legislative or judicial action and courts may not expand or limit their meaning. See Baptist Bldg. Corp. v. Barnes, 874 P.2d 68, 70
(Okla.Ct.App. 1994).
¶ 2 The words "used exclusively" mean the use to which the property is dedicated and devoted; thus, for property to be exempt from taxation under Article X, § 6, it must be dedicated and devoted to religious and charitable purposes. See ImmanuelBaptist Church v. Glass, 497 P.2d 757, 760 (Okla. 1972) (holding that a church parsonage which houses a pastor engaged in full time ministerial work is exempt from property taxes). The exemption does not extend to property that may be owned by the church but used as a source of revenue, rather than used exclusively for a religious or charitable purpose, even if the revenue is used for a religious or charitable purpose. SeeOklahoma County v. Queen City Lodge No. 197, 156 P.2d 340,346-47, 350 (Okla. 1945).
¶ 3 In Queen City Lodge, the Court considered whether a twelve-story building owned by a charitable institution exempt from property taxes was subject to taxation. The Lodge used the twelfth floor for its activities and rented the other eleven floors for offices, stores, and shops for purposes of generating income for its exempt activities. The Court noted that in property tax exemption cases the use to which the property is devoted is the constitutional test to be applied in determining whether the property is exempt and that use is a question of fact to be determined from the evidence. See id. at 346. The Court noted that where property, incapable of separate assessment, is used in part for exempt purposes and in part for nonexempt purposes, it should be taxed in proportion to the respective uses, rejecting the view that the property loses its exemption entirely when not used exclusively for religious purposes.[1] See id at 349. The Court held that the parts of the building that were rented and producing income to support the Lodge's exempt activities were taxable.
 B. Analysis of Religious Use Exemption
¶ 4 Your questions concern whether the religious use exemption would be lost if a church allows its facility to be used (1) for meetings and seminars conducted by nonreligious nonprofit entities, (2) for meetings, seminars and conventions conducted by non-political entities, and (3) as a polling place. If the answer is no to any of these questions, you also ask whether a church may charge a fee and still retain its ad valorem exemption. "Whether property is exempt from ad valorem taxation depends on [the] purpose for which it is used and such is a question of fact." London Square Vill. Inc. v. Oklahoma County Equalization Excise Bd., 559 P.2d 1224, 1226 (Okla. 1976) (citations omitted). Questions of fact cannot be answered in an Attorney General's Opinion. See 75 O.S. Supp. 2000, § 18b[75-18b](A)(5). The question of whether use of the church's facilities by a nonprofit or nonpolitical organization will jeopardize the church's tax exemption depends on the purpose of the organization's use of the property, a factual issue. However, we can offer general guidance in this area based on legal precedents that may help resolve your questions in any given factual scenario.
 1. Purpose of Religious Use Exemption
¶ 5 Property must be used "exclusively for religious and charitable purposes" to qualify for the tax exemption. Okla. Const. art. X, § 6(a). As a background for addressing your questions, it may be helpful to examine the purposes for the exemption. In ruling on the constitutionality of New York's property tax exemption for churches, the United States Supreme Court noted that the "legislative purpose of a property tax exemption is neither the advancement nor the inhibition of religion . . . New York, in common with the other States, has determined that certain entities that exist in a harmonious relationship to the community at large, and that foster its `moral or mental improvement,' should not be inhibited in their activities by property taxation. . . ." Walz v. Tax Comm'n,397 U.S. 664, 672 (1970) (holding that a tax exemption for property used exclusively for religious purposes did not violate the Establishment Clause of the First Amendment). A concurring opinion noted two secular purposes for exempting religious organizations from property taxation: (1) they "contribute to the well-being of the community in a variety of nonreligious ways, and thereby bear burdens that would otherwise either have to be met by general taxation, or be left undone, to the detriment of the community" and (2) "they uniquely contribute to the pluralism of American society by their religious activities." Id. at 687, 688 (Brennan, J., concurring). Justice Brennan noted that church facilities are used not only for religious worship and study, but also for activities beneficial to the community as a whole, such as gatherings to participate in Boy Scout activities, to promote anti-poverty causes, to discuss public issues, or to listen to chamber music. See id. at 688.
 2. Use of Church Facilities by Nonprofit Entities, Including Election Boards
¶ 6 The guiding principle in answering your questions is whether the particular use of the church property is consistent with the exempt purpose of the church.[2] There may be circumstances under which the church's use by nonreligious nonprofit entities could fairly be found to be within the church's ministry of service to its community. For example, if the church sponsors a Boy Scout troop and allows the troop to use its facilities, such use would appear to fall within the exempt purpose and would not jeopardize the church's tax status.[3] Likewise, allowing the County Election Board to use the church as a polling place, a standard practice in many communities, could also be considered a community service within the church's ministry. The church's acceptance of a standard fee paid by the Election Board for use of the church as a polling place would not negate the exempt purpose. The State's election laws acknowledge the fact that churches are used as polling places.[4] See 26 O.S. Supp. 2000, § 3-120[26-3-120] ("Persons, businesses, churches and any other nongovernmental entities providing space for use as a polling place shall not be held liable for any torts arising from any incident occurring in such space during the period when such space is used as a polling place.").
¶ 7 There may, however, be circumstances where use of the church's facilities by nonprofit entities may not be within the church's exempt purpose. For example, a nonprofit business association that used church facilities to put on seminars for businesses would have a business purpose, rather than a religious purpose. In such a case, the church would not lose its exemption entirely, but would have to pay tax on a proportional basis to the extent its property was used for a nonexempt purpose. SeeQueen City Lodge, 156 P.2d at 350 (holding that if property is used for both exempt and nonexempt purposes taxes must be paid on a proportional basis).
¶ 8 It is not the status of the organization using the church's property, whether profit or nonprofit, but rather the purpose of the use that determines the exemption. For example, a business may use the church's property for a charitable purpose, but not a business purpose, without jeopardizing the tax status of the property. A nonprofit organization's use of the property may or may not be exempt depending on whether the activity is consistent with the exempt purpose of the church.
 3. Use of Church Facilities by Nonpolitical Entities
¶ 9 Use of a church's property "for meetings, seminars and conventions conducted by non-political entities" may or may not pass the "religious use" test depending upon the purpose of the meeting, seminar, or convention. For example, a church could not allow its facilities to be used as a convenience store and retain its exemption even if the proceeds were used to support the church's activities because such use would be for a commercial purpose, rather than a religious purpose. See Queen City Lodge,156 P.2d at 354. Likewise, if the church were to use its property for purposes of generating income by renting out its facilities to groups for conventions and seminars on a periodic basis, a court could determine such use was commercial, rather than religious or charitable. Use of the property by groups for purposes that are not consistent with the exempt purpose of the church would subject the church's property to taxation on a pro rata basis.
 4. Fees for Use of Property
¶ 10 Charging fees for the use of the property would be one factor to consider in analyzing whether a particular use of the property is exempt. If the fee is to generate revenue for the church, such fee might lead to a conclusion that the property is being used for profit, rather than for an exempt purpose. However, charging minimal fees to cover the cost of keeping the building open for a meeting, as long as the meeting was for an exempt purpose, would not jeopardize the exemption. See LondonSquare Vill., 559 P.2d at 1226 (whether property is exempt from tax depends upon the purpose for which it is used). Again, it would be a question of fact in any given case as to whether the use met the "religious and charitable purposes" test.[5] If the church is renting its facilities in competition with businesses, such as hotels, with similar meeting facilities, then such use would be subject to challenge as a nonreligious purpose. For example, allowing an investment firm to give seminars in church facilities might be deemed a commercial, rather than a religious, use of the property. If the purpose of the property's use is exempt, then charging a fee for reimbursement of actual expenses incurred by the church in providing the meeting space would not jeopardize the exemption. Making a profit on the rental of the property, however, might result in a finding of a commercial, rather than a religious, use of the property.
¶ 11 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. In order to be exempt from property taxes, church propertymust be "used exclusively for religious and charitable purposes."Okla. Const art. X, § 6; see also 68 O.S. Supp. 2000, §2887(7). Whether property is being used exclusively for areligious purpose is a question of fact that cannot be answeredin an Attorney General's Opinion. See 74 O.S. Supp. 2000, §18b(A)(5). If the property is used for both exempt andnonexempt purposes, it would be taxable on a pro rata basis.
 2. The fact that the entity using the church property is anonprofit organization would not itself be determinative ofwhether the use of the property was for an exempt purpose. As ageneral rule, use of the property for activities that benefit thecommunity, such as use as a polling place or meeting place foryouth organizations or service clubs, may be consistent with theoverall exempt purpose of the church.
 3. Charging fees for the use of the property that would resultin a profit to the church or allowing the use of the property bygroups for nonexempt purposes, may subject the church's propertyto taxation on a pro rata basis. Charging fees to groups that usethe church for an exempt purpose, such as nonprofit charitableorganizations or the County Election Board, for the reimbursementof the actual costs of the use of the facilities would notjeopardize the exemption.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
KATHRYN BASS ASSISTANT ATTORNEY GENERAL
[1] Some states have followed the view that if any part of the property is used for a non-religious purpose, even on an occasional basis, the entire property loses its tax exempt status. See Kansas City Dist. Advisory Bd. v. Bd. of CountyComm'rs, 620 P.2d 344, 347-48 (Kan.Ct.App. 1980) (holding that a religious camp lost its tax-exempt status when it allowed nonreligious groups to use the camp facilities for a nominal fee). In response to that case, the Kansas legislature amended the exemption to provide that the use of exempt property for nonexempt purposes which were minimal in scope and incidental to the exempt purposes did not destroy the property's tax exemption.See Midwest Presbytery v. Jefferson County Appraiser,843 P.2d 277, 279-80 (Kan.Ct.App. 1992).
[2] The "religious use" exemption applies not only to churches, but also to synagogues, temples and mosques.
[3] See, for example, Roman Catholic Archdiocese v. City ofEast Orange, 17 N.J. Tax 298, 315 (N.J. Tax Ct. 1998), which found that Catholic youth basketball practices are consistent with the overall exempt purpose of the church.
[4] Use of a church as a polling place does not advance or inhibit religion and therefore does not violate the Establishment Clause of the First Amendment. See Otero v. State Election Bd.,975 F.2d 738, 741 (10th Cir. 1992). The court noted that there was no showing that excessive rent was paid for the polling place or that government officials were attempting to promote a particular religion or religion in general. See id.
[5] See, for example, In re Mount Shepherd Methodist Camp,462 S.E.2d 229, 231 (N.C.App. 1995), wherein the Court found that the fact some of the campers were charged a fee did not preclude a finding that the purpose of the camp was to serve the religious needs of members of the Methodist Church. The Court noted that the fee was small and there was no evidence that there was any effort by the camp to make a profit. See id.